983 F.2d 1070
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Earl RICHARD, Defendant-Appellant.
 No. 92-5122.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1992.
 
 Before BOYCE R. MARTIN, JR. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Charles Earl Richard, appeals the district court's denial of his motion to suppress evidence in regard to his conviction for violation of 21 U.S.C. § 841(a)(1) for possession with intent to distribute cocaine.
 
 I.
 
 2
 On May 30, 1991, in Memphis, Tennessee, Sergeant Darrel Porter of the Memphis police department received information from a confidential informant that defendant Richard would be selling crack cocaine in front of an apartment building at 1096 Tully. The informant told Porter that Richard had several match boxes containing crack cocaine and described defendant as a heavily built, black man who was approximately six feet tall. According to the informant, Richard was dressed in a red Chicago Bulls shirt and long black pants, and his pants pockets were bulging. The informant stated that he knew all this because he had witnessed Richard selling the crack cocaine.
 
 
 3
 The area around 1096 Tully was known to the police as the "race track," a high crime area where drug trafficking often took place. In fact, Sergeant Porter had made several arrests there previously.
 
 
 4
 On May 30, 1991, Porter, accompanied by Detective Michael Hardy and some uniformed officers, went to the "race track" to locate Richard. Porter and Hardy were in an unmarked police car and in plain clothes. When Sergeant Porter arrived in the area, he saw defendant Richard, who was wearing a red Chicago Bulls shirt and long black pants with bulging pockets, as the informant had indicated. The detectives observed defendant exchanging something with another man. Sergeant Porter, who had witnessed numerous drug transactions, concluded that the exchange between Richard and the other man was similar to other exchanges of drugs and money that he had witnessed.
 
 
 5
 After witnessing the exchange, Sergeant Porter contacted the uniformed officers and told them to check defendant Richard out. The uniformed officers went to the area, but apprehended the wrong man, who was also wearing a Chicago Bulls shirt. Defendant Richard saw the uniformed police officers, left the area rather rapidly, and moved to the corner of Tully and Wells.
 
 
 6
 Sergeant Porter circled the block and returned to the area, passing directly by Richard, who was talking to two men on the corner. As he was passing Richard, Sergeant Porter overheard him tell the two men that "[h]e had to leave away from over there because he couldn't be going to jail again."
 
 
 7
 Sergeant Porter continued to drive slowly down the block, looking back at Richard. Richard watched Porter's car as it drove by and eventually left the corner of Tully and Wells and headed back toward 1096 Tully. At this point, Sergeant Porter got out of the car and began to follow Richard, while Detective Hardy took the car around to the back of 1096 Tully. Sergeant Porter contacted the uniformed officers and told them they had the wrong man and informed them of the direction that Richard was headed in. The uniformed officers approached Richard from the opposite direction. Once he saw the uniformed police officers, Richard went from door-to-door of the apartment building at 1096 Tully trying to find a door that was unlocked. When he found an unlocked door, he immediately rushed into the apartment. Sergeant Porter followed Richard inside. He did not find Richard, but noticed that the window was open and the curtains were blowing in the last room he checked. Detective Hardy later told Porter that he had seen defendant Richard running to the other side of the apartment complex.
 
 
 8
 The confidential informant contacted Porter again on June 5, 1991 with information about Richard. The informant told Porter that he had seen Richard selling drugs at the corner of Manassas and Wells, which is located in the vicinity of the "race track." The informant said that Richard would be wearing a black Chicago Bulls cap, a black Chicago Bulls T-shirt, a black pair of Chicago Bulls shorts and black tennis shoes. The informant also stated to Sergeant Porter that Richard had bulges in his pockets, that his right front pants pocket contained match boxes of crack cocaine, and that he had money in his left front pants pocket.
 
 
 9
 Porter and several other officers went to Wells and Manassas that day and found Richard standing on Wells approximately 50 feet from Manassas. Richard was dressed as the informant said he would be and his pockets were bulging. The officers approached Richard and arrested him. While searching Richard, the officers found two match boxes containing 13.9 grams of crack cocaine in his pants pocket.
 
 
 10
 On June 20, 1991, defendant Richard was indicted by a federal grand jury for possession of 13.9 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).
 
 
 11
 An evidentiary hearing was held on August 29, 1991 on defendant's motion to suppress. Following the submission of proof by both parties, the district court denied the motion to suppress, finding that based upon the totality of the circumstances, the officers had probable cause to arrest Richard without a warrant.
 
 
 12
 Following the denial of his motion to suppress, defendant entered a conditional plea of guilty to the charge of possession of a controlled substance with intent to distribute, reserving the right to appeal the district court's denial of his motion to suppress.
 
 
 13
 The district court sentenced defendant to a term of 71 months in prison and 4 years of supervised release. Defendant timely filed an appeal.
 
 II.
 
 14
 The sole issue raised on appeal is whether the district court properly denied defendant's motion to suppress. Defendant contends that the police lacked the requisite probable cause to arrest him, and therefore the district court erred by denying his motion to suppress. Thus, defendant argues, the cocaine seized during the arrest is inadmissible.
 
 
 15
 This court applies the clearly erroneous standard to findings of fact when reviewing the ruling of a district court on a motion to suppress. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). The Supreme Court has stated that the determination of whether probable cause to arrest exists in a given situation depends upon the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230 (1983).
 
 
 16
 This court has recognized that a probable cause determination involving a defendant's actions in a renowned drug trafficking area presents unique circumstances. United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990). The court in Hughes adopted the four factors articulated in United States v. Green, 670 F.2d 1148, 1151-52 (D.C.Cir.1981)[1] to provide a helpful framework in analyzing probable cause determinations for actions occurring in drug trafficking areas. 898 F.2d at 64.
 
 
 17
 The facts of Hughes are similar to those of the present case. In Hughes, Memphis police detectives were driving in an area known to the detectives as a high crime area where drug trafficking often took place. The detectives observed defendant Hughes standing next to a blue Cadillac and saw her pass a small object to a person in the Cadillac and then saw the person in the Cadillac hand cash to Eric Milbrooks. At this point, the detectives said, "They're doing a drug deal in the street." At the same time, some people on the sidewalk or porch began yelling "police." The detectives then left their car and yelled to Hughes and Milbrooks that they were police officers. Upon hearing the detectives identify themselves as police officers, Hughes and Milbrooks fled the scene. The detectives pursued and apprehended both Hughes and Milbrooks. In the course of apprehending Ms. Hughes, one detective noticed something in her hand. Initially Hughes denied having anything in her hand. However, upon further questioning, she revealed that she was holding a match box. The detective took this match box, opened it and found thirty-four rocks of cocaine base.
 
 
 18
 This court in Hughes concluded that based on these facts, the detectives had probable cause to arrest Hughes. The court in Hughes applied the four Green factors, stating the following:
 
 
 19
 [In Green ] the District of Columbia Circuit Court of Appeals has identified four factors which should be assayed in determining whether the "totality of the circumstances" provides probable cause in a drug case: (1) the presence of a suspect in a neighborhood notorious for drug trafficking; (2) suspects engaging in a sequence of events typical of a drug transaction; (3) a suspect's flight after being confronted by the police; and (4) a suspect's attempt to conceal the subject of his activities. United States v. Green, 670 F.2d 1148, 1151-52 (D.C.Cir.1981).... The first factor is clearly present since the detectives observed appellant Hughes in an area of Memphis which is clearly notorious for drug trafficking. Furthermore, Hughes was in the exact location where the same detectives had made a drug bust several months earlier. Likewise, the second factor is satisfied here since the detectives saw Hughes and her companion hand something to the driver of a car and in return accept currency from the driver. Finally, the third and fourth factors of the Green framework are present in this case because Ms. Hughes fled from detective Garrett and upon her capture denied possessing the crack cocaine found on her person. In sum, all four Green factors are found in this case. As a result, we find that the detectives possessed the requisite probable cause to arrest appellant Hughes. The circumstances of this case strongly suggest that Hughes and her companion were engaged in unlawful drug activity.
 
 
 20
 For the reasons stated above, we affirm the district court's denial of Hughes' motion to suppress.
 
 
 21
 898 F.2d at 64-65.
 
 
 22
 Defendant argues that the facts of the present case used to support a probable cause determination do not meet the criteria established in Hughes. We disagree. In the present case, the first factor of the Green test, the presence of a suspect in a neighborhood notorious for drug trafficking, is clearly met. Furthermore, defendant was in the exact location where the confidential informant said he would be dealing drugs. Although there is nothing in the record to initially indicate the informant's reliability and veracity,[2] the fact that defendant was where the informant said he would be and dressed as described offers independent corroborating evidence of the informant's reliability. However, we agree with defendant that at this point there would not have been sufficient evidence that a crime was being committed to justify a warrantless arrest based on probable cause.
 
 
 23
 It is defendant's subsequent behavior that justifies the arrest. The second Green factor--that the suspect engage in a sequence of events typical of a drug transaction--is satisfied, because the police officers saw defendant Richard hand something to a third person and receive something in return. Although in the present case, the officers did not specify that they saw an exchange of money, this fact is not dispositive. Sergeant Porter testified that the exchange was similar to other exchanges of drugs and money that he had witnessed. Porter testified that he previously had made approximately ten arrests at the "race track" for the purchase of cocaine. The officers were experienced in making drug busts in this area and reasonably concluded that the exchange was a drug deal. Weight must be given to the fact that they were police officers experienced in making such judgments.
 
 
 24
 Defendant argues that such an exchange can also be similar to a non-criminal event. However, this argument is undercut in the present case because the exchange took place in an area notorious for drug trafficking. Moreover, defendant fled after he realized the police were closing in on him. As the Supreme Court noted in Illinois v. Gates, the fact that an act may appear innocent when viewed in a vacuum is not dispositive because the action must be viewed in the context of all the facts of the case. The Supreme Court stated:
 
 
 25
 [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause.... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.
 
 
 26
 462 U.S. at 243 n. 13. Viewed in the context of the totality of the circumstances, it is certainly probable that the exchange the officers witnessed was a drug deal.
 
 
 27
 The third and fourth factors of the Green framework are also present in this case. Defendant Richard not only ran from the uniformed police when he first saw them, but also went to great lengths to avoid apprehension when he realized they were closing in on him--running into an unlocked apartment and then out the back window. The police overheard defendant tell two men that "he had to leave away from over there because he couldn't be going to jail again," indicating that it was necessary to conceal the nature of his activities at 1096 Tully, which satisfies the fourth Green factor.
 
 
 28
 For these reasons, we believe that the police would have had probable cause to arrest defendant on May 30, 1991 if they had apprehended him on this date. On June 5, 1991, the police were again informed by the confidential informant that he had seen defendant dealing drugs at the corner of Manassas and Wells, which is 100 feet from where he was observed on May 30th. Since the informant's reliability and veracity had been previously corroborated by the police's independent observations of defendant's suspicious behavior indicating that he had engaged in a drug deal on May 30, 1991, this second tip gave the police probable cause to arrest defendant when they again found defendant exactly where the confidential informant said he would be and dressed as described, 100 feet from where they had previously seen him make a suspicious exchange.
 
 
 29
 In the totality of the circumstances, the police could reasonably conclude that there was probable cause to believe that defendant had engaged in unlawful drug activity that justified his arrest on June 5, 1991. For this reason, the motion to suppress was properly denied. The judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 In Green, the D.C. Circuit held that an officer had probable cause to make a warrantless arrest when he observed an exchange typical of narcotics peddling in an area noted for drug sales and the suspect fled the scene and attempted to throw something away
 
 
 [2]
 The informant's basis of knowledge in the present case was his own observation. In other words, the informant was not relying on hearsay. Although in Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court overruled a strict application of Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969), an informant's reliability, veracity and basis of knowledge are still relevant considerations in a probable cause determination. Alabama v. White, 110 S.Ct. 2412, 2413-14 (1990)