925 F.2d 1466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Dwayne BELL and Mark Foster, Defendants-Appellants.
 Nos. 89-3858, 89-3942.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1991.
 
 Before BOYCE F. MARTIN, Jr. and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants-appellants Robert Dwayne Bell (Bell) and Mark Foster (Foster) appeal from their judgments of conviction on charges of possessing with an intent to distribute approximately 130 grams of crack cocaine. The district court denied each appellant's motion for suppression of evidence obtained during a search of their persons on March 7, 1989. Subsequent to denial of the motions to suppress, both Bell and Foster entered conditional pleas of guilty to the crimes with which they were charged. Bell was later sentenced to 97 months of incarceration. Foster, who pleaded guilty to the additional charge of carrying a firearm during and in relation to the underlying narcotics offense, see 18 U.S.C. Sec. 924(c)(1), was sentenced to 151 months on the drug count and 60 consecutive months for the firearms conviction, resulting in a total period of incarceration of 211 months.
 
 
 2
 Bell and Foster were arrested by agents of the FBI and officers of the Cleveland police force on the morning of March 7, 1989. FBI agent Kenneth Ligato (Ligato) informed Cleveland police Detective John Bonner (Bonner) early on that day that he (Ligato) had been told by a reliable confidential informant that one Robert Bell was registered in room 320 of the Plaza Hotel. The informant had further advised that Bell had traveled to Cleveland from the Detroit area for the purpose of conducting transactions in cocaine. Bonner and Ligato knew from past professional experience that the Plaza Hotel was a reputed haven for drug dealers.
 
 
 3
 Bonner went immediately to the hotel, where he was joined by seven other local and federal law enforcement officers, including Detective Tim Parkinson (Parkinson) of the Cleveland police. Bonner interviewed the desk clerk, who verified that Robert Bell was registered in room 320. The clerk further informed that room 320 had just requested him to summon a taxi cab, and that the occupant of the room was likely to emerge from the hotel elevator into the lobby at any moment.
 
 
 4
 Bonner and the other officers positioned themselves near the elevator and were prepared to surveil anyone who came through its doors. Within minutes, two men walked off the elevator. One was carrying a hotel room key to which was affixed a key identification disk bearing the number "320"; this was plainly visible. The other individual was carrying a small duffel bag over his shoulder. Bonner asked the individual with the key for his name, to which the suspect replied "Robert Bell." Meanwhile, Parkinson requested identification from Bell's companion, Foster. Foster unzipped his duffel bag (still slung over his shoulder) and reached inside. Parkinson, suspecting that the bag could contain a firearm, grasped the bottom of the duffel and felt what he believed to be a weapon. Parkinson confiscated the bag from Foster and discovered that it contained two .357 caliber revolvers together with a quantity of ammunition.
 
 
 5
 At this juncture, the officers removed Bell and Foster to a room off the lobby, where they proceeded to conduct a more thorough search of both individuals. Bonner uncovered a package containing 130 grams of crack cocaine in Bell's jacket pocket. Foster and Bell were immediately placed under arrest, and were read their Miranda rights. Foster admitted at that time that the guns and drugs belonged to him.
 
 
 6
 In their respective motions to suppress, Bell and Foster argued to the district court that Bonner and the other enforcement officers lacked the reasonable articulable suspicion necessary to subject them to an investigative detention. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968). Both appellants contended before the district court and urge on appeal that the officers were not warranted in suspecting them of criminal wrongdoing solely on the basis of the confidential informant's tip, as it had been related second-hand through agent Ligato. This charge is clearly without merit. The Supreme Court long ago rejected the notion that "reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person." Adams v. Williams, 407 U.S. 143, 147 (1972). Thus, it is permissible for law enforcement officers to avail themselves of information provided by reliable informants. The proposition is equally valid when the informant's information is channeled to local law enforcement personnel through a federal agent, as in the case at bar. See United States v. Barnes, 910 F.2d 1342 (6th Cir.1990); see also United States v. Hensley, 469 U.S. 221 (1985) (police department in one municipality may form reasonable suspicion on the basis of informational "flyer" distributed by another jurisdiction). Ligato's assertion that his informant was reliable was sufficient for Bonner's purposes. But, even if this were not so, the informant's tip was sufficiently corroborated by the time the Terry stop had been initiated because--simply by visual observations of the suspects coupled with the hotel clerk's identification and statement and Bell's disclosure of his name--the officers had verified the accuracy of the informant's information, without intruding upon privacy interests protected under the fourth amendment. See Alabama v. White, 110 S.Ct. 2412, 2416 (1990) (informant's tip may be sufficiently corroborated by readily observable facts so as to permit Terry stop); see also Florida v. Royer, 460 U.S. 491, 497 (1983) (law enforcement officers do not violate the Fourth Amendment by approaching an individual in a public place for the purpose of asking questions). Thus, the district court correctly denied appellants' suppression motions.
 
 
 7
 Approximately two and a half weeks after he entered his plea of guilty, Foster (who was in custody at the time) wrote a letter to the court, pro se, alleging that his counsel, R.J. Stidham (Stidham) had told Foster that he would receive a probated sentence if he paid Stidham a $5,000 retainer. According to Foster, Stidham claimed that both the district judge and the prosecutor owed him favors and, if paid in full, he could ensure that Foster would not be incarcerated.
 
 
 8
 The district court construed Foster's letter as a motion to withdraw his plea of guilty under Fed.R.Crim.P. 32(d).[1] The court convened a series of hearings to consider the motion and elicited testimony from both Foster and Stidham. (Foster's family and girlfriend, who apparently were prepared to give evidence in corroboration of his story, were subpoenaed but failed to appear at any of the scheduled hearings.) The court thoroughly discredited Foster's version of the facts underlying entry of the plea. Of particular consequence to the district court was Foster's admission that he was lying when, during his colloquy with the court at the plea entry proceeding, he insisted that no promises had been made that were not incorporated into the body of the written plea bargain.
 
 
 9
 A district court's ruling on a motion under Fed.R.Crim.P. 32(d) is subject to reversal only if found to be an abuse of discretion. United States v. Stephens, 906 F.2d 251, 253 (6th Cir.1990). The criteria for granting a motion to withdraw a plea of guilty have been clearly established in recent decisions of this court.
 
 
 10
 Those factors include: (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) the potential for prejudice to the government if the motion to withdraw is granted.
 
 
 11
 United States v. Goldberg, 862 F.2d 101, 103-04 (6th Cir.1988); accord United States v. Spencer, 836 F.2d 236, 239-40 (6th Cir.1987).
 
 
 12
 In the case at bar, the first enumerated consideration is nearly dispositive of Foster's claim. At no time during these proceedings, from the moment he was arrested to the time of his Rule 32(d) hearing before the district court, did Foster assert his innocence of the charges against him. This observation, coupled with the fact that most if not all of the other relevant criteria counsel against permitting Foster to withdraw his guilty plea, directs the conclusion that the district court did not abuse its discretion in denying the Rule 32(d) motion.
 
 
 13
 For the foregoing reasons, the judgment of the district court is hereby affirmed.
 
 
 
 [1]
 The rule provides:
 If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason....
 Fed.R.Crim.P. 32(d).