The STATE of Ohio, Appellee,

v.

WILSON, Appellant.

[Cite as *State v. Wilson* (1991), 77 Ohio App.3d 718.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59152.

Decided Oct. 15, 1991.

*Stephanie Tubbs Jones*, County Prosecutor, and *Michael D. Horn*, Assistant County Prosecutor, for appellee.

*Donald Green*, Assistant Public Defender, for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant, Edward Wilson, appeals from his conviction of drug abuse in violation of R.C. 2925.11, and possession of criminal tools in violation of R.C. 2923.24. Appellant pled no contest after the trial judge denied his motion to suppress evidence. Appellant was found guilty and placed on eighteen months' probation.

At the hearing on appellant's motion to suppress, Cleveland Police Detective Daniel Zaller testified that while working the afternoon shift on January 9, 1989, he received an anonymous telephone call. The caller provided informa-

tion on a drug-related shooting in the Green Court area, which is part of the Cuyahoga Metropolitan Housing Authority.

Detective Zaller testified that the caller stated: "A male that was operating a late model, red Mustang had been involved in a shooting in the Green Court area" and "that the vehicle was used to make deliveries in the area, and also in the area of 101st and St. Clair." The caller described the car as a "red, late model Mustang, with a spoiler on the back, and with sport wheels on it."

Detective Zaller, along with Detectives Sharp and Petarcek, were unable to locate the vehicle in the Green Court area, and therefore proceeded to the second location given by the caller, East 101st Street and St. Clair Avenue. The detectives first observed the described vehicle at East 106th Street and St. Clair, headed eastbound at a high rate of speed. The detectives were in an undercover car, which only had flashing grill lights, and they were not in uniform. The car was travelling at approximately sixty miles per hour when it was first located.

The detectives turned on their grill lights and the appellant finally pulled over at Hayden and Fifth Avenue in East Cleveland, approximately five miles from where the chase began.

Detective Zaller testified that he believed the informant's information because new facts were given about the shooting that were either not known to the public, or would not be known unless you were in the area, and that the person knew more than mere rumor.

Appellant's first assignment of error:

# I

"The trial court erred in denying Mr. Wilson's motion for suppression because the evidence seized by the Cleveland police was the fruit of an illegal search and seizure in violation of Article I, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments of the United States Constitution."

■ The appellant argues that the police officers lacked probable cause to stop his vehicle based on the information provided by the anonymous caller. We disagree.

In *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, the Supreme Court addressed the issue of an anonymous tip and the resulting stop of an automobile. As the court explains:

Under *Adams v. Williams* (1972), 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, an informant's tip may carry "sufficient 'indicia of reliability' to justify a [*Terry*] stop" even though it "may have been insufficient to support

an arrest or search warrant." Moreover, *Illinois v. Gates* (1983), 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, adopted "a 'totality of the circumstances' approach to determining whether an informant's tip establishes probable cause," whereby the "informant's 'veracity,' 'reliability,' and 'basis of knowledge'" are highly relevant. "These factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." *Id.*, 496 U.S. at 328–329, 110 S.Ct. at 2415–2416, 110 L.Ed.2d at 308.

Here, a tipster related to the police that a shooting had occurred and that the suspect could be located at one of two specific locations, and he gave a complete description of the suspect's automobile. When the police found the described vehicle at the second location, it proceeded away from the police car at a high rate of speed for five miles. Under the totality of the circumstances, and given the nature of the underlying crime, the officers had a reasonable suspicion on which to stop appellant's vehicle. See, also, *Beachwood v. Smoleny* (Sept. 10, 1991), Cuyahoga App. No. 60921, unreported; *State v. Martin* (Mar. 14, 1991), Cuyahoga App. No. 59976, unreported, 1991 WL 34717.

Appellant's first assignment of error is overruled.

Appellant's second assignment of error.

## II

"Mr. Wilson was deprived of his liberty without due process of law by his conviction and sentencing for possession of criminal tools in violation of R.C. 2923.24, a felony of the fourth degree."

■ Appellant contends that he should not have been convicted for possession of criminal tools pursuant to R.C. 2923.24, but should have received a second degree misdemeanor under R.C. 2925.12, for possession of drug abuse instruments.

Possession of criminal tools is defined in R.C. 2923.24 as follows:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use.

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

Possession of drug abuse instruments is defined in R.C. 2925.12 as follows:

"(A) No person shall knowingly make, obtain, possess, or use any instrument, article, or thing whose customary and primary purpose is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use.

"(B) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies, and other persons whose conduct was in accordance with Chapters 3719., 4715., 4729., 4731., and 4741. of the Revised Code.

"(C) Whoever violates this section is guilty of possessing drug abuse instruments, a misdemeanor of the second degree. If the offender has previously been convicted of a drug abuse offense, violation of this section is a misdemeanor of the first degree."

This court finds plastic baggies held by the appellant in the case *sub judice* meet the definition set forth in R.C. 2923.24 for possession of criminal tools. Plastic baggies do not fall within the parameters of R.C. 2925.12 because they are used in the drug industry for containing and packaging the drugs, and not primarily as an aid for administering or ingesting the drugs.

Appellant's second assignment of error is overruled.

*Judgment affirmed.*

ANN MCMANAMON, P.J., and SPELLACY, J., concur.