61 F.3d 914
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff - Appellee,
v.
Todd Allen UHLINGER, Defendant - Appellant.
 No. 94-10330.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 5, 1995.*
Decided July 11, 1995.
 
 Appeal from the United States District Court for the District of Hawai'i, No. CR-93-00677-DAE; David A. Ezra, District Judge, Presiding.
 D.Hawai'i
 REVERSED.
 Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant-Appellant Todd Allen Uhlinger ("Uhlinger") entered a conditional guilty plea to possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). He appeals the district court's denial of his motion to suppress evidence obtained by Drug Enforcement agents as a result of an investigative stop at the Honolulu Airport. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we reverse.
 
 FACTS
 
 3
 On April 28, 1993, the Honolulu office of the Drug Enforcement Agency ("DEA") received an anonymous tip that a "Todd Allen Uhlinger" would be bringing cocaine to Honolulu via a flight from Las Vegas, Nevada. The anonymous telephone caller informed the DEA that Uhlinger would be traveling under the name "Todd Allen," but did not know when he would be arriving in Honolulu.
 
 
 4
 The caller contacted the DEA the next day with more information. Although he still was unable to identify the flight on which Uhlinger was supposedly traveling, he informed the DEA that Uhlinger usually traveled through an agency called "Jackie's Travel."
 
 
 5
 The anonymous caller contacted the DEA again on April 30, 1993. During this third call, he stated that Uhlinger would be arriving in Honolulu on Saturday, May 1, at approximately 7:00 a.m. His information, however, was incorrect. The DEA agents confirmed that no such flight was scheduled to arrive on May 1 and that "Todd Uhlinger" did not have reservations on any other flights that day. The caller also stated that Uhlinger would depart the airport in a yellow pick-up truck, but the DEA agents were unable to find a truck matching that description parked at the airport.
 
 
 6
 The caller contacted the DEA once again on the evening of May 1, 1993. This time, he left a message that Uhlinger would arrive on Sunday, May 2, at 10:30 a.m., on a flight chartered by Jackie's Travel. The DEA agents determined on their own that Hawaiian Airlines was the carrier, however neither "Todd Allen" nor "Todd Uhlinger" had reservations on the flight.
 
 
 7
 The agents had confirmed Uhlinger's race, hair color, height and weight through a driver's license check conducted after the first anonymous call. Possessing this description of Uhlinger and the information they received from the anonymous caller, the agents went to the airport on May 2, 1993, to observe the passengers arriving on the Las Vegas flight.
 
 
 8
 The agents observed 30 to 40 passengers exit the plane before they saw a man matching Uhlinger's physical description exit the jetway. The man was carrying a small bag, was walking quickly, and looked around. The agents followed him as he left the gateway, proceeded to an empty baggage claim area, and then exited the airport.
 
 
 9
 The man entered a taxi outside the airport. As the taxi began to pull away, one of the agents stepped in front of the vehicle, forcing it to stop. After showing the taxi driver his identification, the agent spoke to the man in the back seat, asking if he could ask him some questions. The man responded "no," and indicated that he was late for a sailboat race at the Waikiki Yacht Club.
 
 
 10
 The agent asked the man for identification and the man gave him his passport. At this point, the agent confirmed that the man was in fact Uhlinger. The agent asked for additional identification, but Uhlinger did not have any. He also asked to see Uhlinger's plane ticket, but Uhlinger stated that he did not have it.
 
 
 11
 The agent asked Uhlinger if he was carrying any narcotics, to which Uhlinger responded "no." The agent then asked for permission to search Uhlinger's bag. Uhlinger asked if the agents had a search warrant and was informed that they did not. He stated that, if they did not have a warrant, they could not search his bag.
 
 
 12
 One of the agents then told Uhlinger that they were going to "detain" his bag. Uhlinger told the agent to "just take the bag" and pushed it towards him. The agents informed Uhlinger how he could reclaim his bag after the detention.
 
 
 13
 The agents took Uhlinger's bag back into the airport, and Uhlinger left in the taxi. Approximately 20 minutes later, a narcotic detection dog examined the bag and alerted to drugs. The DEA agents obtained a search warrant for the bag later that day. The search of the bag revealed approximately two pounds of cocaine.
 
 DISCUSSION
 
 14
 Uhlinger argues that the DEA agents did not have reasonable suspicion to stop him or to detain his bag. Because we agree with Uhlinger that the agents did not have reasonable suspicion to justify the stop, we do not address the propriety of detaining the bag.
 
 
 15
 Whether law enforcement officers have reasonable suspicion to justify an investigatory stop is a mixed question of law and fact, which this Court reviews de novo. United States v. Hernandez-Alvarez, 891 F.2d 1414, 1416 (9th Cir. 1989). Reasonable suspicion exists if the officer is aware of specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the person detained is, or is about to be, engaged in criminal activity. United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir. 1994); United States v. Alvarez, 899 F.2d 833, 836 (9th Cir. 1990), cert. denied, 498 U.S. 1024 (1991) (to justify an investigatory stop, there must be some objective manifestation that the person stopped is, or is about to be engaged in criminal activity). We evaluate the stop by examining the totality of the circumstances and determining whether the detaining officers had a particularized, objective basis for suspecting the person they detained of criminal activity. Alvarez, 899 F.2d at 836.
 
 
 16
 Reasonable suspicion is dependent upon both the content of information possessed by the law enforcement officers and its degree of reliability. Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990). Anonymous telephone tips are the least reliable source of information, Alvarez, 899 F.2d at 841 (Reinhardt, J., dissenting), and the anonymous tips in this case were particularly unreliable, given that they contained a significant amount of inaccurate information.
 
 
 17
 Moreover, an anonymous tip can provide sufficient basis for reasonable suspicion only if there is, as the Supreme Court has stated, "more than the tip itself" to provide some indicia of reliability. White, 496 U.S. at 329, 110 S. Ct. at 2416. In this case, however, we conclude that the DEA agents were not aware of sufficiently specific, articulable facts, independent of the inherently unreliable anonymous tips, to allow them to form a basis for suspecting that the man they stopped at the Honolulu Airport was engaged in criminal activity.
 
 
 18
 Prior to going to the airport to observe passengers disembarking, the agents were able to verify only two innocuous aspects of the anonymous tips: (1) that a "Todd Allen Uhlinger" actually existed, and (2) that a direct flight from Las Vegas was arriving in Honolulu at 10:30 a.m. on May 2, 1993.
 
 
 19
 Once at the airport, the agents saw a man generally matching the physical description on Uhlinger's driver's license disembark the plane. The man carried a small bag, walked quickly, and looked around. He left the airport and got into a taxi.
 
 
 20
 Relying on these facts, the DEA agents argue that they had reasonable suspicion to stop Uhlinger. We disagree. Combining both the anonymous tips and their own independent investigation, the agents still knew only that they were looking for a blond, Caucasian male on the Las Vegas flight. Uhlinger was stopped because he fit this very general description and because he had only a small carry-on bag and walked quickly through the airport.
 
 
 21
 Although we recognize that, in some instances, seemingly innocent conduct may provide a basis for reasonable suspicion, see Alvarez, 899 F.2d at 838, more often, seemingly innocent conduct is just that -- innocent. Only when law enforcement officers are able to combine their observation of otherwise innocent conduct with some articulable basis for concluding that the particular person they are observing may be engaged in criminal activity does reasonable suspicion exist. Here, the agents had no articulable basis for concluding that the man they were following was the "Todd Uhlinger" mentioned in the anonymous tips. They simply followed a man who fit the general description of the person for whom they were looking. That their hunch was correct does not, in retrospect, imbue that hunch with the status of "reasonable suspicion." Because we conclude that the agents lacked reasonable suspicion to stop Uhlinger, we hold that the district court erred in denying his motion to suppress.
 
 CONCLUSION
 
 22
 The district court's denial of Uhlinger's motion to suppress is REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3