DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a judgment of the Erie County Court of Common Pleas that granted appellee's motion to suppress. For the reasons that follow, this court reverses the judgment of the trial court.
Appellant state of Ohio sets forth the following assignment of error:
 "ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS."
The facts that are relevant to the issues raised on appeal are as follows. On July 14, 2000, appellee Todd Dickerson was indicted on one count of possession of crack cocaine in violation of R.C. 2925.11(C)(4)(d) and one count of tampering with evidence in violation of R.C.2921.12(A)(1). On October 5, 2000, appellee filed a motion to suppress and on February 9, 2001, a hearing was held on the motion. The following evidence was heard.
The state presented the testimony of two officers with the Sandusky Police Department. Officer Jack Austin testified that he was on routine patrol on the night of February 15, 2000 when the dispatcher reported a complaint that someone was looking in the windows of residences in the area of East Osborne Street and Columbus Avenue. The dispatcher stated that the individual was a black male wearing a yellow jacket, baggy blue jeans and a knit hat. Officer Austin responded to the call and, when he was about one block away from the area, observed appellee walking on the sidewalk wearing a yellow jacket, baggy blue pants and a knit hat. The officer stated that Officer Matthew Dunn, who also responded to the call, was approximately two blocks behind him at that time.
Austin further testified that he pulled into a driveway about ten feet ahead of appellee, stepped out of his cruiser, and asked appellee if he could speak to him. The officer stated that appellee did not respond and kept walking. Appellee walked around the front of the cruiser and Officer Austin again asked him if he could have a word with him. Appellee looked at the officer and began walking backwards away from him. Officer Austin testified that he then noticed that appellee had his right hand in his coat pocket and asked appellee to take his hand out of the pocket. Appellee did not comply and continued walking backwards, saying nothing. The officer testified that he was concerned for his own safety in the event appellee had a weapon, and said he again told appellee to take his hand out of his pocket. When appellee still did not comply, Austin grabbed appellee's right arm and appellee tried to punch him, hitting the officer several times on the arms. While this struggle was going on, Officer Dunn arrived and the two officers were able to take appellee to the ground and handcuff him. When appellee stood up, the officers saw a bag of crack cocaine on the ground next to him. Officer Austin testified that at no time did he tell appellee to stop or tell him that he was under arrest.
Officer Dunn testified that he and a reserve officer riding with him that night responded to the call describing a black male wearing a yellow jacket, baggy jeans and a knit hat. He stated that when he approached the scene appellee was on the sidewalk between two driveways. As Officer Austin pulled into the driveway in front of appellee, Officer Dunn pulled into the driveway behind appellee. Officer Dunn heard Officer Austin tell appellee that he wanted to talk to him and testified that Austin did not order appellee to stop. He heard Austin tell appellee to take his hand out of his pocket and saw appellee begin to back away from Austin. He then saw Austin grab appellee's arms and appellee begin to hit the officer. Officer Dunn testified that he then grabbed appellee and the two officers wrestled him to the ground. The officers patted appellee down while he was on the ground and when appellee rolled over they noticed a bag of crack cocaine on the ground beside him. Officer Dunn testified that he did not speak to appellee at all as the officers approached him. He further testified that the officers did not search appellee but only patted him down for weapons.
Carrie Leer testified that she was working as a dispatcher for the Sandusky Police Department on the night of February 15, 2000 when the call came in. She stated that the caller told her there was a black male wearing a yellow jacket, baggy jeans and a knit cap looking in the windows of houses. The caller, who did not identify himself, did not provide any other details. She further stated that she would not have told the officers that the call was made anonymously but would have told them only that there was a report of a suspicious subject in the area, along with the physical description as she received it.
On March 9, 2000, the trial court filed a judgment entry summarily granting the motion to suppress. The state filed a timely notice of appeal and on March 20, 2001, moved for findings of fact and conclusions of law pursuant to Crim.R. 12. This court remanded the case to the trial court for the purpose of issuing findings of fact and conclusions of law. On June 11, 2001, the trial court filed a judgment entry with findings of fact and conclusions of law in support of its decision that the officers' stop was illegal and unconstitutional.
In support of its sole assignment of error, the state asserts that the trial court's findings of fact were not supported by the record and that the events that took place between appellee and the police officers constituted a "consensual encounter" rather than a stop and seizure. Appellee responds, as he did in his motion to suppress, that the anonymous caller from whom the police received their information was an unreliable source, and that the officers, lacking reasonable and articulable suspicion, were acting on pretext when they stopped appellee.
The issue before us is whether the information which the anonymous caller provided to the police contained sufficient indicia of reliability to justify an investigatory stop.
In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of the witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275. This court's function is to review the record to determine whether substantial evidence exists to support the ruling of the trial court. Maumee v.Johnson (1993), 90 Ohio App.3d 169.
In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity.
In order for an anonymous tip such as the one received in this case to justify an investigatory stop, significant aspects of the caller's story must be corroborated by the police to provide reasonable suspicion for the stop. Alabama v. White (1990), 496 U.S. 325. In White, the Supreme Court ruled that an investigatory stop was not unconstitutional under the fourth amendment, where the police had received an anonymous tip that a certain female would leave her apartment building at a particular time in a particular car, that she would be heading for a particular motel, and that she would be carrying cocaine in a brown attache case. Id. at 327. After observing the subject as she drove, the police stopped her just short of the hotel. Id.
The White court found that, because the "reasonable suspicion" needed to initiate a Terry stop is a less demanding standard than probable cause, reasonable suspicion "can arise from information that is less reliable than that required to show probable cause." Id. at 330. Thus, because the majority of the details provided by the anonymous informant in White were corroborated by the police before the suspect was stopped, the court held that the police had sufficient reasonable suspicion to initiate a Terry stop. Id. at 332.
The tipster in this case gave the police as much information as could be expected under the circumstances. He told the police dispatcher the sex, race and location of the individual, as well as what the person was wearing and what he appeared to be doing. Officer Austin testified that before he confronted appellee he confirmed all of the information that the dispatcher had given him. He stated that with that information in mind, he observed the immediate area and did not see any individual other than appellee matching the description he was given. The officers who responded to the call then proceeded, in accordance with the requirements set forth in White, to corroborate all of the information that had been provided them before approaching appellee. Within three minutes of receiving the call, they approached the only pedestrian in the area who fit the exact description provided by the tipster.
This clearly was a Terry stop supported by sufficient "reasonable suspicion" in total conformity with the dictates of White. The conduct of the officers in this case in asking appellee to remove his hand from his pocket and in restraining him when he struck out at Officer Austin was mandated by the situation at hand.
Based on the foregoing, we find that the officers in this case had sufficient information on which to base their decision to question appellee. Their actions in approaching appellee were in accordance with the law. Appellee's actions in ignoring Officer Austin's instructions to remove his hand from his pocket and in striking out at the officer led to a lawful seizure. Accordingly, we find that the trial court erred by granting appellee's motion to suppress evidence and appellant's sole assignment of error is well-taken.
On consideration whereof, this court finds that substantial justice was not done the party complaining and the judgment of the Erie County Court of Common Pleas is reversed. This case is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., JUDGES CONCUR.