OPINION
{¶ 1} Michael Brown appeals from his conviction in the Montgomery County Common Pleas Court of attempted possession of crack cocaine pursuant to his no contest plea.
 {¶ 2} The facts underlying this appeal are not in dispute and are set out in the parties' briefs.
 {¶ 3} On January 16, 2004, Defendant-Appellant Michael A. Brown ("Defendant") was indicted by a Montgomery County Grand Jury for one count of possession of crack cocaine in an amount greater than five grams but less than ten grams in violation of R.C. 2925.11(A). (Docket No. 1). On January 29, 2004, Defendant entered a "not guilty" plea to the charge. (Docket No. 2). On February 19, 2004, Defendant filed a motion to suppress. (Docket No. 12). On February 27, 2004, the trial court filed its decision and entry overruling Defendant's motion to suppress. (Docket No. 14). On March 26, 2004, Defendant entered a plea of "no contest" to attempted possession of crack cocaine in violation of R.C. 2925.11(a) and R.C. 2923.02(A), a felony in the third degree. (Docket No. 21). On April 26, 2004, the trial court filed its termination entry and sentenced Defendant to serve a three-year prison term. (Docket No. 23). On May 21, 2004, Defendant filed his timely notice of appeal (Docket No. 24).
 {¶ 4} On November 28, 2003, Officer Gregory Gaier received information from a confidential informant who had provided reliable information on four prior occasions to the police that drugs were going to be delivered around 9:00 p.m. at the intersection of East Fifth Street and Van Lear Street. The informant revealed that the drugs would be delivered by an African-American male, driving a 1990's model red Cavalier. The informant stated that the African-American would be carrying the drugs on his person, specifically in his waistband and buttocks area.
 {¶ 5} At approximately 8:50 p.m. Officer Gaier was conducting surveillance and observed Defendant driving a red 1990's model Cavalier on East Fifth Street towards Van Lear Street. He observed a traffic violation as Defendant failed to signal when he turned onto East Fifth Street. (Tr. 8). Officer Gaier radioed the other officers nearby, informing them that Defendant had just committed a traffic violation.
 {¶ 6} At approximately the same time, Detective House was also surveiling undercover in an unmarked vehicle near the intersection of East Fifth and Van Lear Streets. At approximately 8:50 p.m., he witnessed Brown's red Cavalier enter the intersection and fail to use a turn signal. The vehicle stopped in the street and Brown honked the horn, "[j]ust a couple of short, quick blasts." The vehicle was stopped on the street for approximately ten to fifteen seconds.
 {¶ 7} Officer Wendy Stiver was stationed nearby in her patrol car and received the communication from Officer Gaier. She initiated a traffic stop using her overhead lights and Defendant pulled his vehicle over to the right side of the road. As she approached the vehicle, she noticed that Brown was the driver and sole occupant. Officer Stiver informed Brown that he had committed a traffic violation and asked him for identification, and Brown produced his driver's license.
 {¶ 8} Officer Stiver was initially concerned that Brown was armed because she had reasonable suspicion to believe that Brown was a drug dealer and "[d]rug dealers frequently carry guns." Officer Stiver conducted a pat-down of Brown because of "the information received that he was delivering drugs and the high likelihood that he might be carrying some kind of weapon." However, Officer Stiver was not able to conduct a thorough pat-down at that time because "she wanted to check as much of him as quickly as possible" which was difficult because Brown had a "portly figure." Officer Stiver then asked defendant to sit in the back of her patrol car. Brown was not yet under arrest or handcuffed. Officer Stiver then performed a cursory search of defendant's vehicle for any weapons in the driver or passenger area. Detective House arrived at the scene and patted defendant down for a second time. During the pat-down, Detective House retrieved a bag of crack cocaine from defendant's waistband and he was arrested.
 {¶ 9} Brown moved to suppress the cocaine found on him by the police and the trial court overruled the motion without elaboration. In a single assignment of error, the appellant contends the trial court erred in denying the suppression motion because he contends the police did not have articulable suspicion to believe he was committing a crime or was armed.
 {¶ 10} Appellant does not dispute the validity of the traffic stop for a turn signal violation. He contends, however, that the traffic stop exceeded both a reasonable duration and scope. The State contends that the police had an additional reason to stop appellant because the officer had reasonable articulable suspicion to believe he was about to engage in a drug deal. The State notes that Detective Gaier testified that he had worked with the informant on four or five prior occasions and Gaier said the informant had provided information on known drug houses and individuals who sell drugs, which through independent investigation was proven to be true. (See Tr. at 4). In addition the State argues that the informant's information was corroborated by the observations of the police, namely, that a black male driving a specific car would be selling drugs at a specific location. In addition, Officer Stiver said the area of Van Lear and Fifth Streets is a high drug area and she had made drug arrests in that area in the past.
 {¶ 11} In Alabama v. White (1990), 496 U.S. 325, the United States Supreme Court held that an anonymous telephone tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigative stop. "Reasonable suspicion" entails some minimal level of objective justification for making a stop, that is, something more than inchoate or unparticularized suspicion or "hunch" but less than lack of suspicion required for probable cause. United States v. Sokolow (1989), 490 U.S. 1. In this matter, the police were dealing, not with an anonymous informant, but with a known informant who had provided credible information in the past about drug activity and his information was corroborated by the police. We find that the police had reasonable suspicion to stop and detain Brown for investigation of his conduct. It was also reasonable for the police to frisk Brown for the possible presence of a weapon. The Ohio Supreme Court has recognized the frequency with which guns are found along with illegal drugs. State v. Evans (1993), 67 Ohio St.3d 405, 413. The Court in Evans stated that the right to frisk is virtually automatic when individuals are suspected of committing a crime like drug trafficking. Id. at 403.
 {¶ 12} In conclusion, we find that the trial court properly overruled Brown's suppression motion and Brown's assignment of error is overruled. The judgment of the trial court is Affirmed.
Wolff, J., and Grady, J., concur.