[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12612

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SHABORN WASHINGTON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cr-00070-SPC-KCD-1

————————————————

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Shaborn Washington appeals his conviction for being a felon in possession of a firearm, arguing that the district court erred by denying his motion to suppress evidence.  The district court denied Washington's motion to suppress, relying upon two separate and independent grounds—i.e. (1) that there was reasonable suspicion for the investigatory stop based upon the 911 call and upon the actions of the car in which Washington was a passenger in response to the arrival of the officer's marked vehicle; and (2) that there was probable cause to stop the car based upon the traffic violation of driving without headlights.  Washington challenges both of the alternative rulings.  Washington argues that the police lacked reasonable suspicion to initiate an investigatory stop based on a 911 call that reported gunshots coming from the Wells Fargo where he and his companions were parked.  Because we affirm the judgment of the district court on the basis of the first of its alternative rulings, we need not address the ruling that there was probable cause based on the traffic violation.

"A denial of a motion to suppress involves mixed questions of fact and law." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (*en banc*) (quotation marks omitted), *cert. denied*, 143 S. Ct. 95 (2022).  When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its

application of law to those facts *de novo*, construing all facts in the light most favorable to the prevailing party. *Id.*

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment." *Campbell*, 26 F.4th at 880. For a traffic stop to comply with the Fourth Amendment, the stopping officer must have reasonable suspicion that the person stopped has engaged in criminal activity. *Id.* "We look to the totality of the circumstances to decide if the police had reasonable suspicion." *United States v. Bruce*, 977 F.3d 1112, 1117 (11th Cir. 2020). This inquiry ultimately "hinges on 'both the content of information possessed by police and its degree of reliability.'" *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Where the information possessed by police is derived from a 911 call, the Supreme Court has recognized several potential indicia of the call's reliability. *Navarette v. California*, 572 U.S. 393, 397 (2014); *see also Bruce*, 977 F.3d at 1117. Among these "indicators of veracity" are (1) the caller claiming eyewitness knowledge of the reported events, (2) the caller providing a "contemporaneous report," and (3) the caller using the 911 emergency system. *Navarette*, 572 U.S. at 399-401; *Bruce*, 977 F.3d at 1117. Where all three of the above are present, we have held that even an anonymous tip can be considered reliable without the need for additional corroboration by police. *Bruce*, 977 F.3d at 1117-18.

Additionally, while "[a]n individual's presence in an area of expected criminal activity, standing alone," does not create reasonable suspicion, their presence *does* create reasonable suspicion when combined with unprovoked flight upon the arrival of police. *United States v. Gordon*, 231 F.3d 750, 755-57 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000)).

Here, Deputy Roedding had reasonable suspicion to stop the car Washington was in because (1) the 911 call was sufficiently reliable to make the Wells Fargo parking lot a place of expected criminal activity, and (2) the car fled—albeit slowly—upon his arrival. First, as the district court found in its order denying Washington's motion to suppress, the 911 call bore several indicia of reliability. The call was made via the 911 emergency system and provided a detailed, contemporaneous report, which individuals in the background corroborated. *Navarette*, 572 U.S. at 399-401; *Bruce*, 977 F.3d at 1117. Additionally, while the caller did not provide an eyewitness account, *id.*, she described the noises that she and her employees personally heard and perceived. Finally, the caller in this case was more than an anonymous tipster—she identified herself as the manager of a Domino's and provided her name and phone number. Deputy Roedding was therefore justified in crediting the 911 call's report that potential gunshots had been fired in and screams for help heard from the area of the Wells Fargo parking lot where Washington and his companions were parked. *Navarette*, 572 U.S. at 399 401; *Bruce*, 977 F.3d at 1117.

When Roedding cruised into the Wells Fargo parking lot roughly five minutes after receiving the shots fired call, the car Washington was in was parked. Although the mere presence of the car in an area of suspected criminal activity did not provide Roedding with reasonable suspicion to initiate a stop, *Gordon*, 231 F.3d at 755-57, Roedding's testimony established that, when he entered the lot, the car Washington was in was parked perpendicular to the marked spaces in the Wells Fargo parking lot, with no obvious purpose for being there at 2 AM. The motor of the car was running but the headlights were not on. When Roedding turned the headlights of his marked vehicle toward the car, the car drove away, inexplicably driving about five miles an hour and riding the brakes. The car drove this way for about 30 to 40 yards without its lights on. While the car's flight was certainly not "headlong," there is no indication that it was in response to anything other than Roedding's arrival in the parking lot in a marked cruiser. *Gordon*, 231 F.3d at 757.

Thus, Roedding had reasonable suspicion that the car's occupants were involved in criminal activity based on (1) the car's presence in an area of expected criminal activity and (2) its unprovoked flight upon his arrival. *Id.* at 756-57. Accordingly, the district court did not err in denying Washington's motion to suppress.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**