ALABAMA *v.* WHITE

No. 89–789.   Argued April 17, 1990—Decided June 11, 1990

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 333.

*Joseph G. L. Marston III*, Assistant Attorney General of Alabama, argued the cause for petitioner. With him on the briefs were *Don Siegelman*, Attorney General, and *Stacy S. Houston, Rosa Hamlett Davis*, and *Andrew J. Segal*, Assistant Attorneys General.

*David B. Byrne, Jr.*, by appointment of the Court, 493 U. S. 1054, argued the cause and filed a brief for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

Based on an anonymous telephone tip, police stopped respondent's vehicle. A consensual search of the car revealed drugs. The issue is whether the tip, as corroborated by in-

---

*Briefs of *amici curiae* were filed for the American Civil Liberties Union et al. by *Steven R. Shapiro* and *David I. Schoen;* and for Americans for Effective Law Enforcement, Inc., et al. by *Gregory U. Evans, Daniel B. Hales, Joseph A. Morris, George D. Webster, Fred E. Inbau, Wayne W. Schmidt, Bernard J. Farber, William K. Lambie*, and *James P. Manak.*

dependent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. We hold that it did.

On April 22, 1987, at approximately 3 p.m., Corporal B. H. Davis of the Montgomery Police Department received a telephone call from an anonymous person, stating that Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case. Corporal Davis and his partner, Corporal P. A. Reynolds, proceeded to the Lynwood Terrace Apartments. The officers saw a brown Plymouth station wagon with a broken right taillight in the parking lot in front of the 235 building. The officers observed respondent leave the 235 building, carrying nothing in her hands, and enter the station wagon. They followed the vehicle as it drove the most direct route to Dobey's Motel. When the vehicle reached the Mobile Highway, on which Dobey's Motel is located, Corporal Reynolds requested a patrol unit to stop the vehicle. The vehicle was stopped at approximately 4:18 p.m., just short of Dobey's Motel. Corporal Davis asked respondent to step to the rear of her car, where he informed her that she had been stopped because she was suspected of carrying cocaine in the vehicle. He asked if they could look for cocaine, and respondent said they could look. The officers found a locked brown attaché case in the car, and, upon request, respondent provided the combination to the lock. The officers found marijuana in the attaché case and placed respondent under arrest. During processing at the station, the officers found three milligrams of cocaine in respondent's purse.

Respondent was charged in Montgomery County Court with possession of marijuana and possession of cocaine. The trial court denied respondent's motion to suppress, and she pleaded guilty to the charges, reserving the right to appeal

the denial of her suppression motion. The Court of Criminal Appeals of Alabama held that the officers did not have the reasonable suspicion necessary under *Terry* v. *Ohio*, 392 U. S. 1 (1968), to justify the investigatory stop of respondent's car, and that the marijuana and cocaine were fruits of respondent's unconstitutional detention. The court concluded that respondent's motion to dismiss should have been granted and reversed her conviction. 550 So. 2d 1074 (1989). The Supreme Court of Alabama denied the State's petition for writ of certiorari, two justices dissenting. 550 So. 2d 1081 (1989). Because of differing views in the state and federal courts over whether an anonymous tip may furnish reasonable suspicion for a stop, we granted the State's petition for certiorari, 493 U. S. 1042 (1990). We now reverse.

*Adams* v. *Williams*, 407 U. S. 143 (1972), sustained a *Terry* stop and frisk undertaken on the basis of a tip given in person by a known informant who had provided information in the past. We concluded that, while the unverified tip may have been insufficient to support an arrest or search warrant, the information carried sufficient "indicia of reliability" to justify a forcible stop. 407 U. S., at 147. We did not address the issue of anonymous tips in *Adams*, except to say that "[t]his is a stronger case than obtains in the case of an anonymous telephone tip," *id.*, at 146.

*Illinois* v. *Gates*, 462 U. S. 213 (1983), dealt with an anonymous tip in the probable-cause context. The Court there abandoned the "two-pronged test" of *Aguilar* v. *Texas*, 378 U. S. 108 (1964), and *Spinelli* v. *United States*, 393 U. S. 410 (1969), in favor of a "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause. *Gates* made clear, however, that those factors that had been considered critical under *Aguilar* and *Spinelli*—an informant's "veracity," "reliability," and "basis of knowledge"—remain "highly relevant in determining the value of his report." 462 U. S., at 230. These factors are also relevant in the reasonable-suspicion context, although al-

lowance must be made in applying them for the lesser showing required to meet that standard.

The opinion in *Gates* recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." *Id.*, at 237. This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* stop. But the tip in *Gates* was not an exception to the general rule, and the anonymous tip in this case is like the one in *Gates:* "[It] provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable; likewise, the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding [Vanessa White's] criminal activities." 462 U. S., at 227. By requiring "[s]omething more," as *Gates* did, *ibid.*, we merely apply what we said in *Adams:* "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized," 407 U. S., at 147. Simply put, a tip such as this one, standing alone, would not "'warrant a man of reasonable caution in the belief' that [a stop] was appropriate." *Terry, supra,* at 22, quoting *Carroll* v. *United States,* 267 U. S. 132, 162 (1925).

As there was in *Gates*, however, in this case there is more than the tip itself. The tip was not as detailed, and the corroboration was not as complete, as in *Gates,* but the required degree of suspicion was likewise not as high. We discussed the difference in the two standards last Term in *United States* v. *Sokolow,* 490 U. S. 1, 7 (1989):

> "The officer [making a *Terry* stop] . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" [*Terry,* 392 U. S.,] at 27. The Fourth Amendment requires 'some minimal

level of objective justification' for making the stop. *INS* v. *Delgado*, 466 U. S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' [*Gates*, 462 U. S., at 238], and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Adams* v. *Williams, supra,* demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop. 407 U. S., at 147. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the "totality of the circumstances — the whole picture," *United States* v. *Cortez*, 449 U. S. 411, 417 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The *Gates* Court applied its totality-of-the-circumstances approach in this manner, taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable-suspicion context, the only differ-

ence being the level of suspicion that must be established. Contrary to the court below, we conclude that when the officers stopped respondent, the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that respondent was engaged in criminal activity and that the investigative stop therefore did not violate the Fourth Amendment.

It is true that not every detail mentioned by the tipster was verified, such as the name of the woman leaving the building or the precise apartment from which she left; but the officers did corroborate that a woman left the 235 building and got into the particular vehicle that was described by the caller. With respect to the time of departure predicted by the informant, Corporal Davis testified that the caller gave a particular time when the woman would be leaving, App. 5, but he did not state what that time was. He did testify that, after the call, he and his partner proceeded to the Lynwood Terrace Apartments to put the 235 building under surveillance, *id.*, at 5–6. Given the fact that the officers proceeded to the indicated address immediately after the call and that respondent emerged not too long thereafter, it appears from the record before us that respondent's departure from the building was within the timeframe predicted by the caller. As for the caller's prediction of respondent's destination, it is true that the officers stopped her just short of Dobey's Motel and did not know whether she would have pulled in or continued past it. But given that the 4-mile route driven by respondent was the most direct route possible to Dobey's Motel, 550 So. 2d, at 1075, Tr. of Oral Arg. 24, but nevertheless involved several turns, App. 7, Tr. of Oral Arg. 24, we think respondent's destination was significantly corroborated.

The Court's opinion in *Gates* gave credit to the proposition that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity. 462 U. S., at 244. Thus, it is not

unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.

We think it also important that, as in *Gates*, "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.*, at 245. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. See *ibid.* When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car. We therefore reverse the judgment of the Court of Criminal Appeals of Alabama and remand the case for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Millions of people leave their apartments at about the same time every day carrying an attaché case and heading for a destination known to their neighbors. Usually, however, the neighbors do not know what the briefcase contains. An anonymous neighbor's prediction about somebody's time of departure and probable destination is anything but a reliable basis for assuming that the commuter is in possession of an illegal substance—particularly when the person is not even carrying the attaché case described by the tipster.

The record in this case does not tell us how often respondent drove from the Lynwood Terrace Apartments to Dobey's Motel; for all we know, she may have been a room clerk or telephone operator working the evening shift. It does not tell us whether Officer Davis made any effort to ascertain the informer's identity, his reason for calling, or the basis of his prediction about respondent's destination. Indeed, for all that this record tells us, the tipster may well have been another police officer who had a "hunch" that respondent might have cocaine in her attaché case.

Anybody with enough knowledge about a given person to make her the target of a prank, or to harbor a grudge against her, will certainly be able to formulate a tip about her like the one predicting Vanessa White's excursion. In addition, under the Court's holding, every citizen is subject to being seized and questioned by any officer who is prepared to testify that the warrantless stop was based on an anonymous tip predicting whatever conduct the officer just observed. Fortunately, the vast majority of those in our law enforcement community would not adopt such a practice. But the Fourth Amendment was intended to protect the citizen from the overzealous and unscrupulous officer as well as from those who are conscientious and truthful. This decision makes a mockery of that protection.

I respectfully dissent.