617 So.2d 948 (1993)
STATE of Louisiana
v.
Bazan SANCHEZ.
No. 92-K-1875.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 1993.
*949 Harry F. Connick, Dist. Atty., Alfred A. Olinde Jr., Asst. Dist. Atty., New Orleans, for plaintiff/relator.
Donald Pinkston, New Orleans, for defendant/ respondent.
Before BARRY, WARD and ARMSTRONG, JJ.
WARD, Judge.
On February 21, 1992, defendant, Bazan Sanchez, was charged with possession of at least twenty-eight but less than 200 grams of cocaine, a violation of La.R.S. 40:967. He was arraigned on March 9th and pled not guilty. Defendant filed a motion to suppress the evidence, which was granted on July 24th. The State now comes before this court seeking relief from this ruling. We now grant the State's application for supervisory writs to consider the correctness of the trial court's granting of defendant's motion to suppress the evidence.
On the evening of January 28, 1992, New Orleans Police Officer Armond Jacques received a tip from an untested confidential informant that two black Cuban males would be leaving the 4600 block of S. Robertson Street to transport a large amount of cocaine somewhere in the Sixth Police District. A police report attached to the writ application indicates that the informant said the two males would be travelling to the St. Thomas Housing Project. The informant described one of the males as light-complected, speaking a little English, and the other as dark-complected and speaking practically no English. The informant told Officer Jacques that the men would be driving a tan Ford Bronco with a certain license plate number. The informant also indicated that there were firearms in the Bronco.
Shortly after receiving the tip, police set up a surveillance near the 4600 block of S. Robertson Street. Officers Jacques and Gene Ballex were in one vehicle, and Officers William Ceravolo and Juan Henry were in another vehicle. The officers soon saw two black males and a female enter a tan Ford Bronco parked in front of 4620 S. Robertson Street. The Louisiana license plate number on the Bronco matched the one given by the informant. The officers followed the Bronco to Freret Street where it turned and proceeded in a downtown direction toward the Sixth Police District, as the informant said it would. The Bronco then turned onto Louisiana Avenue and headed in a riverbound direction.
Officer Jacques was behind the Bronco, and testified that it drove very slowly down Louisiana Avenue, below the speed limit. Officers Jacques and Ballex both testified that when the Bronco got to Prytania Street, it made a quick left turn and sped off in a downtown direction into the Sixth District, toward the St. Thomas Housing Project. At that point, the officers stopped the car. As the officers approached the vehicle, Officer Ballex saw the driver, defendant Bazan Sanchez, reach under the driver's seat with his right hand. Fearing defendant might have a gun, the officers ordered defendant and his passengers out of the vehicle. Defendant exited the Bronco and left the driver's door open. Officer Ceravolo looked inside the vehicle and saw the grip or handle of a gun sticking out from under the front seat. As he pulled the 9mm semi-automatic handgun out from under the seat, a plastic bag containing a white substance also fell out. The gun and the plastic bag, containing what was later *950 confirmed as cocaine, were seized and defendant and the other black male were arrested.
The gun was discovered when Officer Ceravolo looked inside the car and saw the gun's grip sticking out from under the seat. When he pulled the gun from under the seat, the bag of cocaine also fell out from under the seat. The State submits the seizure of these items was justified under the "plain view" exception to the Fourth Amendment's warrant requirement. For evidence to be seized under the "plain view" exception to the warrant requirement, (1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). See also State v. Taylor, 531 So.2d 1137 (La.App. 4th Cir.1988).
Here, Officer Ceravolo immediately recognized the grip of the gun. If Officer Ceravolo was lawfully where he was, he was justified in retrieving the firearm, at least for purposes of investigating the firearm to see if it was legal. The cocaine was inadvertently discovered as a result of the seizure of the firearm. The determining factor as to whether the seizure of these items was legal is whether Officer Ceravolo was lawfully in the position of seeing the grip of the gun under the seat. He only discovered the contraband when defendant was stopped and ordered out of the car. Defendant was ordered out of the car when Officer Ballex saw him making a motion with his hand as if he could have been reaching for a gun. Officer Ballex only saw this movement when defendant was stopped. Therefore, the key to the legality of the seizure of the contraband is whether the stop of the defendant was lawful.
The officers were following defendant's vehicle only because they had received a tip from an untested informant. The U.S. Supreme Court, in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), established a "totality of the circumstances" approach for determining whether an informant's tip is reliable enough to establish probable cause. In the instant case we are concerned not with probable cause, but with the lesser reasonable suspicion necessary to make an investigative stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Louisiana, the Terry investigative stop is provided for by La.C.Cr.P. art. 215.1, which provides that an officer may stop a person in a public place if he "reasonably suspects" he is committing, has committed, or is about to commit a crime.
The dispositive issue as to the lawfulness of the stop is whether the officers had knowledge of specific, articulable facts which, if taken together with rational inferences from those facts, supported the reasonable belief that defendant or someone in the vehicle which he was driving was committing, was about to commit, or had committed a crime, thus warranting the investigatory stop. See State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, Flowers v. Louisiana, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Gervais, 546 So.2d 215 (La.App. 4th Cir.1989).
The totality of the circumstances approach of Gates contemplates that even an anonymous tip can establish the higher standard of probable cause. The Supreme Court also has long held that an informants's unverified tip may carry sufficient "indicia of reliability" to justify a Terry investigatory stop, even though it may be insufficient to establish probable cause to arrest or issue a search warrant. See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the U.S. Supreme Court used the totality of the circumstances analysis to determine that an anonymous telephone tip, corroborated by independent police work, furnished sufficient indicia of reliability to provide the reasonable suspicion necessary to support a Terry investigative stop. In Alabama v. White, police received an anonymous telephone tip that the defendant would be leaving a particular apartment complex, at a specific time, in a brown Plymouth station *951 wagon with a broken taillight, that she would be going to a particular motel, and was in possession of cocaine inside a brown attache case.
Police staked out the apartment complex and observed a brown Plymouth station wagon with a broken taillight parked in front. They observed the defendant leave the apartment complex, carrying nothing in her hands, and enter the station wagon. Police followed the defendant as she drove off following a route that would lead her to the specified motel. When she turned onto the highway on which the motel was located, and as she neared the motel, police stopped her. She consented to a search of her vehicle which revealed a brown attache case containing marijuana. Cocaine was discovered in the defendant's purse during her arrest processing.
Even though police did not verify the name given by the informant, nor the specific apartment the defendant was supposed to be leaving, the court noted that the officers did corroborate that a woman left the apartment building within the time frame predicted by the informer, and got into the vehicle described by the informant. As for the motel destination given by the informant, the court found that because the defendant was proceeding on a route that would have taken her to the motel, and she was stopped near the motel, that also was sufficient corroboration.
The court gave great weight to the informant's ability to predict "future behavior" of the defendant, i.e. that the defendant would shortly leave the apartment building, get into a particular vehicle, and drive a route that would take her to the motel, "because it demonstrated inside information." The court stated:
Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop. (Citations omitted).
Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417.
In the instant case, police officers corroborated the information given by the informant in several respects: (1) They observed a tan Ford Bronco parked in front of a building in the 4600 block of South Robertson Street as stated by the informant; (2) The Louisiana license plate number on the Bronco matched the one given by the informant; (3) Two black males, along with a female, exited the building and entered the Bronco within the time frame predicted by the informant; and (4) The subjects drove off and followed a route which took them from the Second Police District into the Sixth, and in the direction of the St. Thomas Housing Project, the police district and location the informant said the men would be travelling to.
Not only did the officers corroborate all of this information given by the as yet untested informant, including information regarding defendant's "future behavior," but the officers made the investigatory stop of the Bronco only after the occupants apparently saw they were being followed by police and made a sudden left turn and sped off.
While a person's flight at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be one of the factors leading to a finding of reasonable suspicion. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4th Cir.1992).
Both Officer Jacques and Officer Ballex testified that they stopped the vehicle defendant was driving based on (1) the information from the confidential informant, which they had corroborated, and (2) defendant's speeding off after apparently discovering that police were following him. Without reaching the question of whether the officers could have made the investigatory stop based solely on the informant's tip and their independent corroboration of *952 that information, we find that, because of defendant's flight at the sight of the officers tailing him, the officers in the instant case had a greater degree of reasonable suspicion to make a Terry investigatory stop than did the officers in Alabama v. White, supra. Therefore, the officers made a lawful investigatory stop of the vehicle defendant was driving.
Upon making the lawful investigatory stop defendant was observed reaching under the seat of the vehicle. Therefore, the officers had a justifiable fear for their safety and lawfully ordered defendant and his companions out of the vehicle. See State v. Landry, 588 So.2d 345 (La. 1991). When Officer Ceravalo lawfully reached into the vehicle and retrieved the firearm whose recognizable grip or handle was in plain view, the cocaine rolled out from under the seat and he lawfully seized it.
Therefore, the trial court erred in granting defendant's motion to suppress the evidencethe firearm and the cocaine.
For the foregoing reasons, we reverse the judgment of the trial court granting the motion to suppress the evidence.
WRIT GRANTED; REVERSED.