752 So.2d 192 (1999)
STATE of Louisiana
v.
Donnie MIMS.
No. 98-KA-2572.
Court of Appeal of Louisiana, Fourth Circuit.
September 22, 1999.
Harry F. Connick, District Attorney of Orleans Parish, John Jerry Glas, Assistant District Attorney, Parish of Orleans, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY, and Judge ROBERT A. KATZ.
KATZ, Judge.

STATEMENT OF THE CASE
Defendant, Donnie Mims, was charged by bill of information on June 8, 1998 with possession of cocaine (crack), a violation of La. R.S. 40:967(C). the defendant pled not guilty at his June 16, 1998 arraignment. On June 18, 1998, following a hearing, the trial court found probable cause and denied the defendant's Motion to Suppress the Evidence. On June 22, 1998, the defendant withdrew his former plea of not *193 guilty and entered a plea of guilty as charged, reserving his right to appeal the denial of his Motion to Suppress pursuant to State v. Crosby.[1] That same date, the defendant waived all legal delays and was sentenced to serve three and one-half years at hard labor. The State filed a habitual offender bill of information, and the defendant admitted to having been convicted of the two prior felonies set forth in the multiple bill. The trial court adjudicated the defendant a third-felony habitual offender, ordered that the original sentence be vacated and set aside, and pursuant to La. R.S. 15:529.1, sentenced the defendant to serve three and one-half years at hard labor. The trial court denied the defendant's Motion to Reconsider Sentence, and granted his Motion for Appeal.

STATEMENT OF FACTS
New Orleans Police Officer Troy Williams testified that on April 3, 1998, at approximately 2:00 a.m., he received information from a confidential informant that defendant, whom the informant knew as "Head," was dealing crack and powdered cocaine on St. Louis Street between Bourbon and Burgundy Streets. The informant described the individual as wearing a white T-shirt and blue jeans, with a brace on his left leg. The informant also stated that defendant concealed the drugs near the brace on his left leg, and that defendant limped as he walked. Officer Williams said that approximately fifteen minutes later, he observed an individual matching the description given by the informant walking in the 800 block of St. Louis Street. Officer Williams and his partner exited their vehicle and informed the defendant that he was under investigation for possible narcotics violations. Officer Williams performed a frisk or patdown of defendant, and felt several rocklike objects along his left leg. Officer Williams said that from past experience, he recognized the objects to be narcotics, and subsequently retrieved crack cocaine and a small bag containing powdered cocaine from the defendant's left leg near his brace.
On cross examination, Officer Williams stated that the informant was a "registered informant." He said the drugs were in leotard-type pants the defendant was wearing inside of his jeans, right above his leg brace, and said he recalled there were six or eight twenty-dollar rocks. He said that for safety reasons, he patted down the defendant's entire body for weapons.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant argues that the trial court erred in denying his Motion to Suppress the Evidence because the police had no reasonable suspicion to stop him and/or no probable cause to arrest him.
Officer Williams testified that when he approached the defendant, he informed him that he was under investigation for possible narcotics violations. Officer Williams said that he did not place the defendant under arrest until he discovered the cocaine. There is no evidence that the defendant had actually been arrested at the time he was searched, and, while the defendant argues the absence of both reasonable suspicion to stop and probable cause to arrest, he does not present an argument that defendant had been placed under arrest at the time of the search.
During a Motion to Suppress the Evidence, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La. App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a Motion to Suppress the Evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and *194 weigh the credibility of their testimony. Jones, supra.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense...." La.C.Cr.P. art. 215.1; State v. Sheehan, 97-2386, p. 3 (La.App. 4 Cir. 12/9/98), 740 So.2d 127, 129; State v. Bentley, 97-1552, p. 7 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. "Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, 97-2774, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326.
In the case sub judice, the testimony clearly establishes that the reason Officer Williams and his partner stopped the defendant was the information received from the confidential informant. The police received information that a particularly described individual was selling drugs in a particular block, and when they drove to that block within approximately fifteen minutes, they saw the defendant, who perfectly matched the description they had been given, but who was not engaged in any suspicious activity at the time. Nevertheless, the officers immediately proceeded to stop and frisk the defendant.
Thus, the issue that arises is whether or not based on the information received by the officers from the confidential informant, did the officers have reasonable suspicion to stop and conduct the ensuing pat down of the defendant without observing any independent suspicious activity.
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the U.S. Supreme Court used the totality of the circumstances analysis to determine that an anonymous telephone tip, corroborated by independent police observations, provided reasonable suspicion necessary to support an investigative stop. In White, an anonymous telephone caller told police that the defendant would be leaving a particular apartment complex, at a specific time, in a brown Plymouth station wagon with a broken taillight, that she would be going to a particular motel, and that she was in possession of cocaine. Police staked out the apartment complex, and noticed a brown Plymouth station wagon with a broken taillight parked in front. They observed the defendant leave the apartment complex, enter the station wagon empty handed, and drive away. They followed the defendant as she took a route in the direction of the motel. After the defendant turned onto the highway on which the motel was located, and neared the motel, the police stopped her. She consented to a search of her vehicle, which revealed marijuana in a brown attache case. Cocaine was later found in the defendant's purse during arrest processing.
The court gave great weight to the informant's ability to predict "future behavior" of the defendant, i.e. that the defendant would shortly leave the apartment building, get into a particular vehicle, and drive a route that would take her to the motel, "because it demonstrated inside information." The court stated:
Because only a small number of people are generally privy to an, individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there *195 was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop. (Citations omitted).
Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417.
In State v. Sanchez, 617 So.2d 948 (La. App. 4 Cir.1993), this court heavily relied on White to reverse a trial court judgment granting the defendants' motion to suppress evidence seized after an investigatory stop based primarily on a tip from an "untested informant." New Orleans police were given information that two black Cuban males, one light -complected, the other dark-complected, would be leaving a residence in the 4600 block of S. Robertson Street in a particular tan Ford Bronco, and traveling to the St. Thomas Housing Project to deliver a large amount of cocaine. Police staked out the 4600 block of S. Robertson Street and observed two black males and a female enter a tan Ford Bronco parked in that block. The license plate number on the Bronco matched the number given them by the informant. Police followed the Bronco as it traveled in a direction that could have eventually led to the St. Thomas Housing Project. The occupants apparently observed the police tailing them, and suddenly made a left turn and sped off in a direction toward the project. Police then effected a stop, and discovered a quantity of cocaine in the Bronco. In finding that police had reasonable suspicion to stop the vehicle, this court stressed that, as in White, police had corroborated information given them by the informant, including information regarding the defendants' future behavior. In addition, in Sanchez, the defendants fled upon seeing that they were being followed by police.
In the recent case of State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the court reversed a trial court's denial of a motion to suppress evidence seized as the result of an investigatory stop prompted by an anonymous tip to New Orleans police via the Alcohol, Tobacco, and Firearms ("ATF") Hotline. The caller informed police that an individual known as "Will," who drove a dark green Pontiac Grand Am with very dark-tinted windows, was involved in the illegal distribution of narcotics in the Magnolia Housing Project. The caller described Will as a very dark-complected black male, who was short and had the appearance of being a juvenile. The caller also told police that the described vehicle was parked in the 2800 block of Magnolia Street when it was not being used to deliver narcotics. A police officer and an ATF agent went to the 2800 block of Magnolia Street, where they observed the dark green Pontiac Trans Am with dark-tinted windows parked in a driveway. Before they could set up a surveillance, the car drove away. The officers followed the car until it stopped at another location. When the driver exited, the officers observed that he matched the description given by the caller. The officers then approached the defendant and asked his name. After defendant identified himself as William Robertson, he was told that he was "under investigation for narcotics." Robertson, at p. 1269. A police dog alerted on the defendant's car, indicating the presence of narcotics, and a search turned up a large plastic bag of cocaine under the ashtray.
The trial court denied the motion to suppress, and this court denied defendant's application for supervisory writs.[2] The Louisiana Supreme Court, relying on White, noted that police were able to corroborate certain aspects of the anonymous tip, including the defendant's name, his physical description and the location of the vehicle. However, the court found that this was not enough, stating:
The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. *196 In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. ... The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged activities. (Emphasis added).
97-2960 at p. 5, 721 So.2d at 1270.
In State v. Carey, 609 So.2d 897 (La. App. 4 Cir.1992), this court reversed the defendant's conviction for possession of a firearm by a convicted felon after finding that police lacked reasonable suspicion to justify the investigatory stop leading to the discovery of the gun. Police received a tip from a confidential informant who had previously provided information which led to arrests, seizures and convictions. The informant told police that in approximately one hour, a short black male named Leroy, driving either a 1981-82 green Mercury Cougar or a Mercury of some type, which was in good shape, would be delivering crack cocaine in the 2300 block of Lafitte Street, in the Lafitte Housing Project. Approximately forty-five minutes later, officers maintaining a surveillance observed a green Mercury Cougar with a brown top leaving the 2300 block of Lafitte Street. A black male, the defendant, was driving with another black male and a black female as passengers. The defendant stopped at a nearby used car lot and talked with someone for about five minutes. Officers later lost sight of the car, but saw the defendant briefly exit. After following the car for about one-half hour, police stopped the car and found a 9mm handgun underneath the seat. In finding that the information possessed by police did not give rise to reasonable suspicion necessary for an investigatory stop, this court stated:
Information from the confidential informant was not based on personal knowledge as to the defendant's alleged role in a cocaine delivery. The officers followed the defendant for a period of time and did not observe suspicious activity. These circumstances are distinguishable from cases which involve an on-the-scene tip by an informant who points out the car containing drugs and no mistake was possible.
609 So.2d at 900.
In State v. Morales, 583 So.2d 129 (La. App. 4 Cir.1991), this court upheld the trial court's denial of a motion to suppress evidence seized after an investigatory stop. Police received a telephone tip from a known informant who had provided reliable information in the past which had led to arrests and convictions. The informant stated that he overheard a telephone conversation between a companion and another person, from which the informant deduced that two hispanic males from Miami were in New Orleans to deliver cocaine, that they were staying at the La Quinta Motel on Crowder Boulevard, and they were driving a blue Mercury automobile. Police set up a surveillance at the motel and observed a blue Mercury with Dade County, Florida license plates in the parking lot. During the surveillance, police observed a hispanic male drive up and enter a motel room occupied by two males. After that individual left the room, police questioned him, and he informed them that he had been to visit Alfredo Serantes, whom police had already determined was the registered owner of the blue Mercury. The individual told police that Serantes owned the vehicle and that he was the only one in the room. The next morning, police observed Serantes and the defendant Morales nervously look around while loading the blue Mercury with luggage and an ice chest. A police officer stated that drug couriers often use an ice chest to avoid having to make frequent stops along the highway. Police followed the vehicle and stopped it when it turned toward New Orleans instead of east toward Florida.
This court cited White in upholding the denial of the motion to suppress, finding that police had corroborated information *197 given to them by a reliable informant through their observation of the vehicle at the motel on the date specified by the informant. This court also noted that police had observed activities consistent with drug sales. The court stressed that the U.S. Supreme Court has noted that a case involving a known informant presents "a stronger case than obtains in the case of an anonymous telephone tip" citing Adams v. Williams, 407 U.S. 143, at 146, 92 S.Ct. 1921, at 1923, 32 L.Ed.2d 612 (1972).
Hence, in evaluating the validity of a stop, the totality of circumstances must be considered.
In addressing the circumstances in the case sub judice, it is clear that the state did not meet the minimal burden necessary to justify the stop. For example, the court in White stated that "an informant's "veracity," "reliability," and "basis of knowledge"remain "highly relevant in determining the value of his report." quoting Illinois v. Gates, 462 U.S. 213 at 230, 103 S.Ct. 2317 at 2328, 76 L.Ed.2d 527. The informant's background may even be considered in conjunction with independent police corroboration in order to justify a stop and frisk. But in the case sub judice Officer Adams stated that he received his information from a "registered informant." Yet there was no additional information elicited during the motion hearing regarding this informant's "veracity," "reliability," or "basis of knowledge." In other words, there was no evidence elicited to indicate that this informant had worked with this officer or any other officer in the past; that the informant had led to any arrests or convictions in the past; or that the information given by this informant at this time was corroborated by any independent police observation. In other words, the officers did not observe any suspicious behavior on the part of the defendant Donnie Mims that would appear to be drug related, nor did they observe any suspicious behavior from a safety standpoint that would require a pat down for safety. Thus, merely verifying a clothing description by an informanteven a "registered informant" who has not been determined to be reliable is not sufficient corroborating evidence in and of itself to justify the stop, frisk and pat-down in the case sub judice.
Therefore, any contraband or other illegal substance seized via the pat-down was illegally seized, should have been suppressed and is inadmissible in any subsequent proceeding arising out of this matter.
Accordingly, the conviction of Donnie Mims is vacated and set aside; there is no need to review Assignment of Error No. 2; and this matter is remanded for further proceedings consistent with this Court's ruling.
REVERSED AND REMANDED.
NOTES
[1] 338 So.2d 584 (La.1976).
[2] State v. Robertson, unpub., 97-1950 (La. App. 4 Cir. 11/5/97), 701 So.2d 272.