758 So.2d 356 (2000)
STATE of Louisiana
v.
Calvin WILSON.
No. 99-KA-2334.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 2000.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Attorney for Defendant/Appellant, Calvin Wilson.
Harry F. Connick, District Attorney, Holli Herrle-Castillo, Assistant District Attorney, New Orleans, LA, Attorneys for Plaintiff/ Appellee.
*357 Court composed of Judge MIRIAM G. WALTZER, Judge MOON LANDRIEU, Judge DENNIS R. BAGNERIS, Sr.
WALTZER, Judge.
Defendant, Calvin Wilson, appeals his conviction and sentence for possession of cocaine. Wilson argues that the trial court erred in denying his motion to suppress evidence seized after an illegal stop.

STATEMENT OF CASE
Calvin Wilson was charged by bill of information on 29 April 1997, with possession of cocaine, a violation of LSA-R.S. 40:967. On 21 May 1997, he entered a plea of not guilty. On 19 December 1997, the court denied Wilson's motion to suppress evidence, a medicine bottle filled with 30 rocks of crack cocaine. On 28 May 1998, a six-member jury found the defendant guilty as charged. On 9 July 1998, the court sentenced the defendant to thirty months in the Department of Corrections. That same day, the State filed a multiple bill, to which the defendant pled guilty. The court vacated the defendant's original sentence and re-sentenced him as a second felony offender pursuant to LSA-R.S. 15:529.1 to thirty months, concurrent with any other sentence being served.

STATEMENT OF FACTS
While on routine patrol on 3 February 1997, Officer Eduardo Colmenero and his partner, Officer Denise Miles, received a call from dispatch that an anonymous caller reported a "suspicious" person at the corner of Bienville and Gayoso Streets. The dispatcher described the suspect as a black male wearing a plaid shirt and white shorts, and "possibly" selling drugs. When Officers Colmenero and Miles arrived at the intersection, Lt. Robert McNeal met them. Officer Colmenero observed the defendant, fitting the description broadcast by the dispatcher, leave the corner and enter Adams grocery store. Officer Colmenero entered the store and asked the defendant to step outside. Once outside, the defendant became nervous and began to look as though he was going to run. However, the other two officers blocked his path. The officers ordered the defendant to put his hands on the patrol car so they could conduct a pat down for weapons. Officer Colmenero acknowledged that from his experience drugs and weapons are usually found together. The defendant, however, refused to extend his arms. Lt. McNeal conducted the pat down and discovered a medicine bottle tucked into the defendant's left armpit. The bottle contained 30 pieces of rock cocaine. The defendant became very agitated and refused to get into the patrol car. The officers arrested the defendant for possession of cocaine.
Officer John F. Palm, Jr., an NOPD criminologist and expert in the testing and analysis of controlled dangerous substances, testified that the contents of the medicine bottle retrieved from the defendant tested positive for cocaine.
Officer Denise Miles testified that she assisted in the defendant's arrest. The police dispatcher received an anonymous call concerning a black male selling drugs on the corner of Bienville and N. Gayoso Streets. When they arrived on the scene, the officers noticed the defendant, who was wearing clothing matching the dispatcher's description, enter Adams grocery store. Officer Colmenero walked into the store and brought the defendant back out to the patrol car. The defendant appeared nervous and looked as though he was going to run, so she and Lt. McNeal blocked his escape. For their safety, the officers ordered the defendant to submit to a pat down by opening his legs and extending his arms. The defendant refused to cooperate. Lt. McNeal conducted the pat down and discovered a medicine bottle tucked underneath the defendant's left arm. The defendant created a commotion and resisted arrest.
Lt. Robert McNeal testified for the State that he assisted in the arrest of the defendant. He heard the radio dispatch describing the clothing worn by a black *358 male selling drugs on the corner of Bienville and N. Gayoso Streets. Lt. McNeal proceeded to the location as back up for the arresting officers. He saw Officer Colmenero run into the grocery store and exit the store holding Wilson's pant's belt loop. The defendant fit the description given by the dispatcher. Lt. McNeal noted that the defendant was very nervous and uncooperative. Observing the defendant's posture and behavior, Lt. McNeal feared he might have a weapon so he patted the defendant down and discovered a medicine bottle tucked into the defendant's armpit.
Ronnie Hyde testified for the defense. He stated that he was standing in front of Adams grocery store when the police drove up and entered the store. When the police exited the store, they had the defendant handcuffed. Three officers searched the defendant but found nothing. The defendant did not resist the officers.

ERRORS PATENT
A review for errors patent of the record reveals none.
ASSIGNMENT OF ERROR Wilson argues that the trial court erred in refusing to suppress the evidence seized since the police officers lacked reasonable suspicion to stop him.
In State v.Huntley, 97-0865, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v.Kalie, 96-2650, p. 3 (La.9/19/97); 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstances -the whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" Id."

In State v. Kalie, 96-2650 (La.9/19/97); 699 So.2d 879, 881, the Louisiana Supreme Court found that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action." Citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978).
The authorization for a temporary stop by a police officer of a person in a public place is set forth in LSA-C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonable suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. *359 3/3/99); 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99); 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99); 743 So.2d 651. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, 97-2774, p. 8 (La.App. 4 Cir. 2/3/99); 731 So.2d 319, 326.
In the present case, the testimony indicates that Officer Colmenero and his partner detained the defendant as a result of information received from an anonymous caller who said that a "suspicious" individual, dressed in a plaid shirt and white shorts, standing on the corner of Bienville and Gayoso Streets, was "possibly" selling narcotics. The officers arrived at that location within two to three minutes of receiving the dispatcher's call, and saw the defendant, who matched the description they had been given, standing on the corner and then enter the corner grocery store. There was no testimony that the officers saw the defendant engaged in suspicious activity when they arrived at the scene. However, Officer Colmenero entered the store and directed the defendant outside for an investigation, which culminated in the officer's patting down the defendant and finding the cocaine. Not until the officers discovered the bottle, opened it and found the cocaine did they place the defendant under arrest.
Consequently, the question is whether, based on the information received by the police from an anonymous caller, the officers had reasonable suspicion to stop the defendant, in the absence of apparent suspicious activity.
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the U.S. Supreme Court used the totality of the circumstances analysis to determine that an anonymous telephone tip, corroborated by independent police observations, provided reasonable suspicion necessary to support an investigative stop. In White, an anonymous telephone caller told police that the defendant would be leaving a particular apartment complex, at a specific time, in a brown Plymouth station wagon with a broken taillight, that she would be going to a particular motel, and that she was in possession of cocaine. Police staked out the apartment complex, and noticed a brown Plymouth station wagon with a broken taillight parked in front. They observed the defendant leave the apartment complex, enter the station wagon empty handed, and drive away. They followed the defendant as she took a route in the direction of the motel. After the defendant turned onto the highway on which the motel was located, and neared the motel, the police stopped her. She consented to a search of her vehicle, which revealed marijuana in a brown attache case. Cocaine was later found in the defendant's purse during arrest processing.
The court gave great weight to the informant's ability to predict "future behavior" of the defendant, i.e. that the defendant would shortly leave the apartment building, get into a particular vehicle, and drive a route that would take her to the motel, "because it demonstrated inside information." The court stated:
Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop. (Citations omitted).
Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417.
In State v. Sanchez, 617 So.2d 948 (La. App. 4 Cir.1993), this court heavily relied on White to reverse a trial court judgment granting the defendants' motion to suppress evidence seized after an investigatory stop based primarily on a tip from an "untested informant." New Orleans police were given information that two black Cuban *360 males, one lightcomplected, the other dark-complected, would be leaving a residence in the 4600 block of S. Robertson Street in a particular tan Ford Bronco, and traveling to the St. Thomas Housing Project to deliver a large amount of cocaine. Police staked out the 4600 block of S. Robertson Street and observed two black males and a female enter a tan Ford Bronco parked in that block. The license plate number on the Bronco matched the number given them by the informant. Police followed the Bronco as it traveled in a direction that could have eventually led to the St. Thomas Housing Project. The occupants apparently observed the police tailing them, and suddenly made a left turn and sped off in a direction toward the project. Police then effected a stop, and discovered a quantity of cocaine in the Bronco. In finding that police had reasonable suspicion to stop the vehicle, this court stressed that, as in White, police had corroborated information given them by the informant, including information regarding the defendants' future behavior. In addition, in Sanchez, the defendants fled upon seeing that police were following them.
In the recent case of State v. Robertson, 97-2960 (La.10/20/98); 721 So.2d 1268, the court reversed a trial court's denial of a motion to suppress evidence seized as the result of an investigatory stop prompted by an anonymous tip to New Orleans police via the Alcohol, Tobacco, and Firearms ("ATF") Hotline. The caller informed police that an individual known as "Will," who drove a dark green Pontiac Grand Am with very dark-tinted windows, was involved in the illegal distribution of narcotics in the Magnolia Housing Project. The caller described Will as a very dark-complected black male, who was short and had the appearance of being a juvenile. The caller also told police that the described vehicle was parked in the 2800 block of Magnolia Street when it was not being used to deliver narcotics. A police officer and an ATF agent went to the 2800 block of Magnolia Street, where they observed the dark green Pontiac Trans Am with dark-tinted windows parked in a driveway. Before they could set up a surveillance, the car drove away. The officers followed the car until it stopped at another location. When the driver exited, the officers observed that he matched the description given by the caller. The officers then approached the defendant and asked his name. After defendant identified himself as William Robertson, he was told that he was "under investigation for narcotics." Robertson, supra at 1269. A police dog alerted on the defendant's car, indicating the presence of narcotics, and a search turned up a large plastic bag of cocaine under the ashtray.
The trial court denied the motion to suppress, and this court denied defendant's application for supervisory writs.[1] The Louisiana Supreme Court, relying on White, noted that police were able to corroborate certain aspects of the anonymous tip, including the defendant's name, his physical description and the location of the vehicle. However, the court found that this was not enough, stating:
The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. ... The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged activities. (Emphasis added).
97-2960 at p. 5; 721 So.2d at 1270.
In State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99); 752 So.2d 192. The police received information from a confidential *361 informant that defendant, known as "Head", was dealing cocaine on St. Louis Street between Bourbon and Burgundy Streets. The information described the individual as wearing a white T-shirt and blue jeans, with a brace on his left leg. The information also stated that defendant concealed the drugs near the brace on his leg, and that defendant walked with a limp. Within fifteen minutes of the tip, the officers observed an individual matching the description given by the informant walking in the 800 block of St. Louis Street. The officers exited their vehicle and informed the defendant that he was under investigation for possible narcotics violations. The officers performed a frisk or pat down of the defendant and felt several rock-like objects along his left leg. The officer testified that from past experience, he recognized the objects as narcotics, and subsequently retrieved cocaine and a small bag containing powdered cocaine from the defendant's leg near his brace. This court reversed the trial court's denial of the motion to suppress, concluding that since the officers neither observed any suspicious behavior by the defendant which would justify a belief he was dealing drugs nor did they observe any suspicious behavior from a safety standpoint that would require a pat-down, the stop was unjustified.
In addressing the circumstances of the present case, the state did not meet the minimal burden necessary to justify the stop. For example, the court in White stated that "an informant's "veracity," "reliability," and "basis of knowledge" remain "highly relevant in determining the value of his report." quoting Illinois v. Gates, 462 U.S. 213 at 230, 103 S.Ct. 2317 at 2328, 76 L.Ed.2d 527. The informant's background may even be considered in conjunction with independent police corroboration in order to justify a stop and frisk. But in this case Officer Colmenero testified that he received his information from a dispatcher who in turn received the information from an anonymous caller. Hence, as in Mims, there was no information elicited either during the hearing on the motion to suppress or at trial regarding the anonymous caller's "veracity," "reliability," or "basis of knowledge." Additionally, unlike White and Sanchez, in this case there was no independent corroborating police evidence that the defendant was engaged in criminal activity. Under cross-examination Officer Colmenero pointedly admitted that he did not see the defendant engaged in any suspicious activity. Nor was there an extensive description of the defendant and his activities as there was in Robertson. In this case, aside from a description of the clothing worn by the defendant, the only "evidence" of suspicious activity was the anonymous tip that the suspect was "possibly" selling drugs on the corner of Bienville and Gayoso Streets. The officers did not testify that the area was a "high crime" area or a location noted for drug trafficking. Moreover, the officers did not observe any suspicious behavior on the part of the defendant that would appear to be drug related.
The arresting officers candidly admitted that they did not witness any suspicious activity and effected the stop pursuant to an anonymous tip that the defendant was "possibly" selling drugs. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we conclude that there was no reasonable suspicion to detain defendant.

CONCLUSION
For the above reasons, we conclude that the trial court erred in denying the defendant's motion to suppress. This judgment is reversed, and the motion to suppress is granted. Accordingly, Wilson's conviction and sentence are reversed.
This matter is remanded to the trial court for further proceedings consistent with this opinion.
CONVICTION AND SENTENCE REVERSED AND REMANDED.
NOTES
[1] State v. Robertson, unpub., 97-1950 (La. App. 4 Cir. 11/5/97); 701 So.2d 272.