# IN THE COURT OF APPEALS OF IOWA

No. 13-0603
Filed July 30, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MARCUS GAMBLIN,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Richard D. Stochl (motion to suppress) and Kellyann M. Lekar (trial and sentencing), Judges.

A defendant appeals the district court's denial of his motion to suppress evidence. **AFFIRMED.**

Marcus D. Gamblin, Fort Madison, appellant pro se.

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brian Williams, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**VOGEL, J.**

Marcus Gamblin appeals following his convictions for first-degree robbery, in violation of Iowa Code section 711.2 (2011); possession of a controlled substance with intent to deliver while in the immediate possession or control of a firearm, in violation of section 124.401(1)(d) and (1)(e); and possession of a firearm as a felon, in violation of section 724.26. He claims on appeal the district court should have granted his motion to suppress evidence because the officers did not have reasonable suspicion to remove him, as a passenger, from the vehicle or conduct a pat-down of his person. Because we agree with the district court's conclusion the officers had reasonable suspicion to both remove Gamblin from the vehicle and conduct a pat-down of his person, we affirm the district court's denial of his motion to suppress.

## I. Background Facts and Proceedings.

Police officers received a tip from a confidential informant on February 29, 2012, that Willie Phillips would participate in a robbery in a certain location in Waterloo. Officer Nissen, an undercover police officer, was already investigating Phillips as part of a narcotics investigation and observed a black Monte Carlo outside of Phillips's residence on the afternoon of February 29. Officer Nissen informed Officer Girsch of the information in the tip and asked him to be around the area that evening.

About four hours after receiving the tip, police dispatch received a call an armed robbery had taken place at the Neighborhood Mart. This location was approximately one mile from the location the confidential informant reported the robbery would occur. The victim reported to dispatch the robber was a black

male, wearing a ski mask and brandishing a handgun. The victim also reported seeing the robber and an accomplice get into a light-colored, full-sized car.

Approximately twenty-five minutes after the dispatch regarding the robbery, Officer Nissen observed a black Monte Carlo drive by his position. He also noticed the license plate light was not functioning to illuminate the rear plate. He called Officer Girsch and informed him of the location of the vehicle, the equipment violation, that the vehicle was earlier under surveillance for a narcotics investigation, and that it likely was involved in the robbery. Officer Girsch, who was near the area, located the vehicle and pulled it over.[1]

As the suspect vehicle came to a stop, Officer Girsch and his partner, Officer Gann, observed a black male rise from a lying-down position in the back seat of the vehicle and then begin moving from side to side. Officer Girsch observed the suspect's right shoulder come up at an angle, which made it appear the suspect was lifting his rear off the seat. With his prior experience, Officer Girsch understood these types of "furtive movements" to be associated with people concealing contraband by shoving items in the seat, in their pants, or in their pockets. Both Officers Girsch and Gann verbally warned each other about the movements and were concerned for their safety as they approached the vehicle due to the movements coupled with the information they had received from Officer Nissen that this vehicle may have been involved in the earlier armed robbery.

---

[1] Officer Girsch was in a marked police vehicle with Officer Gann. Officer Nissen was in an unmarked police vehicle and, as a result, could not conduct the stop.

The officers identified the suspect in the back seat as Marcus Gamblin. Willie Phillips was the front seat passenger, and the vehicle was being driven by the vehicle's owner, Medeese Jenkins. Approximately six minutes into the stop, and after showing Jenkins the malfunctioning light, Officer Girsch asked Gamblin to step out of the vehicle. The officer advised Gamblin multiple times to keep his hands visible; Gamblin allowed his hands to go down by his waist several times. While Gamblin, a large man, may have had some difficulty exiting a two-door vehicle from the back seat, he appeared to the officers to be stalling. Gamblin's hand movements were a red flag to Office Girsch. Once out of the vehicle, Gamblin's hands again went toward his waistband. Officer Girsch advised him to put his hands on the roof of the vehicle; Gamblin complied, and Officer Girsch placed him in handcuffs for the officers' safety. A pat-down search was conducted, and Officer Girsch located a handgun in Gamblin's pocket. Other officers on the scene observed, in plain view, a baggie with a powdery substance on the floorboard of the back seat of the car where Gamblin's feet were, as well as a ski mask near the front passenger seat.

After charges were filed against Gamblin, he filed a motion to suppress the evidence obtained as a result of the stop, asserting the officers lacked reasonable suspicion to remove him from the vehicle or conduct a pat-down. After a hearing involving the testimony of Officers Nissen, Girsch, and Gann and Medeese Jenkins, the district court denied the motion. The case proceeded to trial where Gamblin was found guilty. He was sentenced to twenty-five years with a mandatory seventy-percent minimum on the first-degree-robbery conviction, five years on the possession-of-a-firearm-as-a-felon conviction, and

ten years on the possession-with-intent conviction. The robbery and possession-with-intent convictions were ordered to be served consecutively, but the felon-in-possession-of-a-firearm conviction was ordered to be served concurrently, for a total term of incarceration of thirty-five years. Gamblin appeals the denial of his motion to suppress.

## II. Scope and Standard of Review.

Our review of the district court's denial of a motion to suppress based on an alleged constitutional violation is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We conduct an independent evaluation of the totality of the circumstances as shown by the entire record. *Id.* We give deference to the district court's factual findings because of its opportunity to evaluate the credibility of the witnesses, but we are not bound by those findings. *Id.*

## III. Analysis.

Gamblin admits the vehicle in which he was riding was validly stopped for the equipment violation. However, he claims the officers did not have reasonable suspicion to remove him, as a passenger, from the vehicle or conduct a pat-down search. He also acknowledges that the United States Supreme Court has ruled "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" under the Fourth Amendment. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997). However, he asks that we interpret the Iowa Constitution more narrowly and afford passengers additional protection against searches and seizures by requiring officers to have "articulable and objective reasons that would lead a reasonable officer to be concerned for his safety or the

safety of others" before removing a passenger from a vehicle. He cites no Iowa cases that have so held, and we find none.

Even if we were to agree the Iowa Constitution should require such a reasonable-suspicion standard before passengers could be removed from a vehicle, we conclude, as did the district court, the officers in this case had reasonable suspicion, justifying Gamblin's removal from the vehicle and the subsequent pat-down. In denying the motion to suppress, the district court stated:

> Girsch testified he did not feel safe with Gamblin in the rear of the vehicle. Gamblin had made numerous furtive movements indicative of possessing or hiding contraband or a weapon. Officers knew a robbery had just occurred and that the suspect had brandished a gun. They observed him move in such a fashion that it appeared he was tucking something into his pants or into the seat. A reasonable interpretation of these movements was that Gamblin was hiding or retrieving a gun, thus understandably causing officers to be concerned for their safety.
> Once Gamblin was out of the car, Girsch had the right to perform a pat-down search. That pat-down search was reasonable and justified under the circumstances.

Gamblin disagrees with the district court's findings, pointing out that dispatch did not relay any information connecting the black Monte Carlo to the robbery, the victim reported the vehicle involved was "light-colored," the officers took six minutes to remove him from the vehicle, indicating to him they did not reasonably fear for their safety, and there were a number of innocent reasons he could have been making the movements he made in the back seat as the officers approached. The reasonable-suspicion standard does not require officers to rule out the possibility of innocent behavior before initiating a stop. *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002); *see also Alabama v. White*, 496 U.S. 325,

330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

After our de novo review of the facts and applicable law in this case, we agree with the district court. Both officers testified that Gamblin's movements in the back seat, along with the information they had received from Officer Nissen and dispatch regarding the very recent armed robbery, the connection between this vehicle and Phillips, and the connection between Phillips and the robbery, gave them reasonable suspicion to believe their safety, or the safety of others, was at risk. The officers were justified in asking Gamblin to exit the vehicle. Gamblin's actions in failing to keep his hands away from his waistband as he exited the vehicle gave the officers additional reasons to conduct the pat-down search.

Even under the more restricted interpretation of the search-and-seizure protections of the Iowa Constitution proposed by Gamblin in this case, we find the removal of Gamblin from the vehicle and the subsequent pat-down valid. We therefore affirm the district court's denial of his motion to suppress.

Gamblin raises two claims in his pro se brief. First, he alleges the district court made multiple errors in its factual findings. We have reviewed the errors alleged and reviewed the record de novo. We do not find any of the alleged errors had any effect on the ultimate conclusion of the district court. *See Pals*, 805 N.W.2d at 771 (noting our de novo review includes the totality of the

circumstances as shown by the entire record).  Gamblin also asserts his trial counsel was ineffective when counsel failed to play the video of the traffic stop for the court at the hearing.  We note the video was admitted as evidence at the suppression hearing and available to the court for viewing after the hearing.  We find neither a breach of a duty nor prejudice as a result of the video not being played for the court during the actual suppression hearing.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting out the applicable standard to prevail on a claim of ineffective assistance of counsel).

We affirm Gamblin's convictions and sentences.

**AFFIRMED.**