Filed 12/19/14  P. v. Monges CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VALENTIN CRUZ MONGES,<br><br>    Defendant and Appellant. | D064222<br><br><br><br>(Super. Ct. No. SCD243573) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael Smyth, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Valentin Cruz Monges was convicted of the unlawful taking and driving of a vehicle (Veh. Code, § 10851, subd. (a)) and admitted prior felony

convictions and a prior prison term (Pen. Code,[1] §§ 666.5, subd. (a), 667.5, subd. (b), 668).[2]

The trial court sentenced Monges to four years in prison. On appeal, Monges contends that he was subjected to an unlawful detention prior to his arrest and that the detention in turn led to the discovery of incriminating evidence. As we explain, Monges's detention was lawful and the trial court did not err in denying his motions to suppress. Accordingly, we affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Detention and Arrest*

At 5:00 a.m. on the morning of September 27, 2012, San Diego Police Officer John Cortez saw Monges getting out of Honda in an area where stolen cars were often left. Cortez was suspicious not only because of the area where the Honda was parked but also because Hondas are the most commonly stolen brand of vehicles.

After Monges and a female companion left the Honda, they met a second woman and walked away. At that point, Cortez attempted to determine whether the Honda was stolen by running the license plate through a system available in his patrol car, but it did not appear as a stolen vehicle. Cortez nonetheless examined the Honda and noticed that its hood was warm and that there was a key in the ignition that did not appear to be a Honda key. Based on the fact that at one time he had owned both Hondas and Chevys, Cortez believed the key was a Chevy key that had been "shaved" so it could be used to

---

[1] All further statutory references are to the Penal Code.

[2] The jury also found Monges guilty of on a separate count of receiving a stolen vehicle (section 496d), however the trial court set aside his conviction that count.

2

steal cars. Cortez then located Monges who was in the passenger seat of a Chrysler with the woman he had met after getting out of the Honda.

Cortez asked Monges to step out of the Chrysler, and Monges complied. Because Cortez was alone, he handcuffed Monges and advised Monges he was investigating a possible stolen car. Because the car was registered to a person in El Cajon, Cortez asked his dispatcher to contact the El Cajon police department and request that someone from that agency contact the registered owner of the Honda.

During the detention, Cortez explained to Monges that he had seen Monges leave the Honda. Monges explained that a man named Carlos owned the Honda and that Carlos had given him a ride to the location where the Honda was parked. About 20 minutes after Monges was detained, Cortez's dispatcher advised Cortez that the Honda had in fact been stolen. Cortez then placed Monges under arrest and returned to the parked Honda. Cortez opened an unlocked door on the Honda and photographed the key in the ignition; he then removed the key and discovered it was in fact a shaved Chevy key.

B. *Motions to Suppress*

At the time of his preliminary hearing, Monges moved to suppress evidence obtained as a result of his detention, including his statements. The trial court denied the motion and bound Monges over on the charges filed by the district attorney. Some weeks later, Monges filed a new motion to suppress evidence and present new evidence. The trial court conducted an evidentiary hearing and denied Monges's second motion.

DISCUSSION

On appeal, Monges once again argues that his detention was unlawful and that the

3

evidence Cortez obtained as a result of the detention should have been suppressed.  As we indicated at the outset, we find no error in the trial court's orders denying Monges's motions to suppress.

A.  *Legal Principles*

In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, when they are supported by substantial evidence.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  We exercise our own independent judgment in determining, whether, on the facts found, a search or seizure was lawful.  (*Ibid.*)

With respect to investigative detentions, such as the one that occurred here, the cases are clear that a police officer's seizure of a person need not be justified by probable cause to arrest for a crime.  (*People v. Souza* (1994) 9 Cal.4th 224, 230 (*Souza*).)  "In *United States v. Cortez* [(1981) 449 U.S. 411, 417 & fn. 2], the high court stressed the importance of taking into account 'the totality of the circumstances' in determining the propriety of an investigative stop or temporary detention:  'Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person.  Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise.  But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'  [Citation.]

"In *United States v. Sokolow* (1989) 490 U.S. 1, 7, the high court reiterated its

4

view that the 'reasonable suspicion' necessary to justify a brief, investigative detention is a level of suspicion that is 'obviously less demanding than that for probable cause' and can be established by 'considerably less than proof of wrongdoing by a preponderance of the evidence.' Thereafter, in *Alabama v. White* (1990) 496 U.S. 325, 330, the United States Supreme Court characterized 'reasonable suspicion' as a standard less demanding than probable cause 'not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'

"From these decisions by the United States Supreme Court we distill this principle: A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Souza*, *supra*, 9 Cal.4th at pp. 230-231.)

B. *Analysis*

Here, the information available to officer Cortez was more than sufficient to justify Monges's detention. In the early morning hours, a vehicle prone to theft was left in an area known to the officer as a dumping ground for stolen cars. Although the car had not yet been reported as stolen in the system available to Cortez, Cortez noted evidence the car had recently been driven, and, most suspiciously, a key had been left in the car's ignition that did not appear to match the make of the car. This fact suggested to Cortez the key was a "shaved" key commonly used to steal cars. Each of these facts are articulable and taken together raised a reasonable suspicion that the car was stolen and

5

that Monges, who Cortez had seen leaving the car, was involved in a possible theft. Contrary to Monges's argument on appeal, given the totality of the circumstances apparent to Officer Cortez, no more was required to justify Monges's detention. (*Souza*, *supra*, 9 Cal.4th at pp. 230-231.)

Although Monges attacks the import of each of the circumstances Cortez relied upon as unreliable and argues that each circumstance was not by itself particularly suspicious, he ignores the requirement that we look at the totality of the circumstances and the fact that in detaining a suspect, Cortez was permitted to act on information that would not support an arrest or a conviction. (*Souza*, *supra*, 9 Cal.4th at pp. 230-231.)

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

6