[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10877
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-00054-WKW-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA DRAKE HOWARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 27, 2021)

Before WILSON, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Joshua Howard appeals his convictions after pleading guilty to possessing with intent to distribute methamphetamine, possessing a firearm in relation to a controlled substance offense, and to possessing a firearm with an obliterated serial number: violations of 21 U.S.C. § 841(a)(1), and 18 U.S.C. §§ 924(c)(1)(A), 922(k). On appeal, Howard challenges the district court's denial of his motion to suppress (1) physical evidence seized during a traffic stop and (2) incriminating statements Howard later made to police. No reversible error has been shown; we affirm.

I.    Background

On 21 February 2018, officers with the City of Dothan, Alabama, Police Department learned from a confidential informant ("CI-1") that Howard planned to travel to Phenix City, Alabama, that night to pick up some methamphetamine. Officer Tye sought additional information about Howard from a second CI ("CI-2"): an informant who had begun working with Officer Tye the day before and

2

who had already provided "good information" about four other drug-trafficking cases.

CI-2 told Officer Tye that she knew Howard and knew that Howard sold methamphetamine. CI-2 agreed to contact Howard for more information. CI-2 later reported to Officer Tye that Howard planned to travel to the Phenix City area that day to pick up methamphetamine, needed to borrow a vehicle for his trip, and asked to borrow CI-2's truck.

With CI-2's consent, Officer Tye installed a GPS tracking device on CI-2's truck at about 2:30 p.m. The GPS tracking device was designed to send a signal when in motion, allowing officers to monitor remotely the real-time location of a moving vehicle. The device sent no signal when not in motion.

About two hours after installation of the GPS, Howard took possession of CI-2's truck. Officer Tye began tracking the truck using the GPS; he also confirmed visually that the GPS was reporting accurately the truck's location. Officers then ceased visual surveillance and monitored the truck's movement solely via GPS.

According to the GPS reporting, the truck left Dothan later that day, traveled along the main highway between Dothan and Phenix City, and stopped moving for the night in Seale, Alabama. The next day, the truck left Seale, stopped briefly at

3

an address in Phenix City, returned to Seale, and then headed back in the direction of Dothan.

As the truck approached Dothan, officers resumed visual surveillance on the truck and confirmed that Howard was driving. When the truck parked at a fast-food restaurant at about 2:00 p.m., Officer Tye pulled behind the truck and activated his emergency lights and siren.

Officer Tye ordered Howard to exit the truck and placed Howard in handcuffs. As he did so, Officer Tye saw a handgun in the driver's-side door pocket. Officer Tye searched Howard's person and found a small baggie of methamphetamine. During a search of the truck, officers also discovered a black tactical bag containing three bags of methamphetamine, drug paraphernalia, a second handgun, and ammunition.

Howard was transported to the police station. After being advised of his Miranda[1] rights and after signing a waiver form, Howard made incriminating statements to the police.

Howard later moved to suppress the evidence found during the traffic stop and to suppress his post-Miranda statements. Howard argued that the police violated his Fourth Amendment rights by monitoring his movements via GPS and

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

by stopping him without reasonable suspicion.  Howard also argued that his incriminating statements constituted fruit of an illegal search and seizure.

Following a suppression hearing, the magistrate judge issued a report and recommendation ("R&R") recommending denying Howard's motion.  Howard filed timely objections to the R&R, which the district court overruled.  Then, in a 26-page order, the district court adopted the R&R with modifications and denied Howard's motion to suppress.

Howard entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress.  The district court sentenced Howard to a total of 140 months' imprisonment and 5 years' supervised release.[2]

II.    Discussion

"In reviewing a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of law to those facts de novo," construing the facts in the light most favorable to the prevailing party below. United States v. Ramirez, 476 F.3d 1231, 1235-36 (11th Cir. 2007).  We review de

---

[2] Howard raises no challenge to his sentence on appeal.

5

novo a district court's determinations about reasonable suspicion.  See Ornelas v.

United States, 517 U.S. 690, 699 (1996).

A. GPS Monitoring[3]

The Fourth Amendment protects "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures."  U.S. Const. amend. IV.  Generally speaking, whether "government-

initiated electronic surveillance" constitutes a "search" triggering Fourth

Amendment protection depends on whether a person has a reasonable expectation

of privacy in the area searched.  See Smith v. Maryland, 442 U.S. 735, 740 (1979)

(citing Katz v. United States, 389 U.S. 347 (1967)).

The Supreme Court has concluded that "[a] person traveling in an

automobile on public thoroughfares has no reasonable expectation of privacy in his

movements from one place to another."  See United States v. Knotts, 460 U.S. 276,

281 (1983).  No expectation of privacy exists because a person driving on public

streets conveys voluntarily "to anyone who wanted to look the fact that he was

---

[3] This appeal involves only the lawfulness of the officers' monitoring of the GPS device.
Howard raises no challenge to the district court's determination that the installation of the GPS
device on CI-2's truck -- with CI-2's consent -- constituted no Fourth Amendment search of
Howard.

traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." Id. at 281-82.

In Knotts, police monitored the movement of a vehicle using a combination of visual surveillance and a radio-transmitting beeper. The beeper was installed -- with the pertinent chemical company's consent -- inside a 5-gallon drum of chloroform that was later sold to a co-defendant and then transported by car from Minneapolis, Minnesota, to a remote cabin in Wisconsin. Id. at 278. The Supreme Court concluded that the officers' monitoring of the beeper signals along public streets and highways invaded no legitimate expectation of privacy and, thus, constituted no "search" or "seizure" within the meaning of the Fourth Amendment. Id. at 285. The Supreme Court noted that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancements as science and technology afforded them in this case." Id. at 282.

Like the beeper in Knotts, the GPS tracking device at issue in this case "augmented [the officers'] sensory faculties" by allowing the officers to gather remotely information about the truck's location and movement on public roads: information that could have been obtained by police through visual surveillance.

7

Howard's attempts to distinguish Knotts are unpersuasive. First, we can discern no material difference between the duration of the beeper monitoring involved in Knotts (which seems to have taken place over the course of one day) and the 22-hour GPS monitoring involved in this case.

Second, that the GPS tracker detected Howard's stops along his travel route -- stops that could have been observed via visual surveillance -- is no different than the circumstances in Knotts. The officers in Knotts followed the car in which the beeper-containing chloroform drum was first placed as the car drove to and stopped at a co-defendant's house. The container was then transferred to a second car, which officers followed on public roadways across state lines to the car's final destination. Id. at 278. The Supreme Court said expressly that a person lacked an expectation of privacy in "the fact of whatever stops he made" while traveling on public roads. Id. at 281-82.

We also reject Howard's assertion that this case is controlled by the Supreme Court's decision in Carpenter v. United States, 138 S. Ct. 2206 (2018). In Carpenter, the Supreme Court concluded that the government's warrantless acquisition of 127 days' worth of historical cell-site location information ("CSLI")[4] constituted a search under the Fourth Amendment. The Supreme Court

---

[4] Cell-site location information is the time-stamped data generated each time a cell phone connects to the nearest cell tower. See Carpenter, 138 S. Ct. at 2211.

stated that a person "maintains a reasonable expectation of privacy in the whole of his physical movements." Id. at 2219. The Supreme Court stressed that -- unlike the monitoring of a container or a vehicle, as in Knotts -- people "compulsively" carry cell phones on their person at all times. The tracking of a cell phone thus "achieves near perfect surveillance" of the phone's owner as the "cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." Id. at 2218. The Supreme Court also found significant the retrospective nature of the CSLI data, which allowed police to reconstruct a person's past movements without the police having decided in advance to investigate that person. Id.

We find the circumstances of this case -- involving the real-time GPS monitoring of a vehicle traveling on public roads -- easily distinguishable from the historical CSLI data at issue in Carpenter.

The district court concluded properly that this case is controlled by Knotts, which remains good law.[5] Under Knotts, Howard had no reasonable expectation

---

[5] The Supreme Court has discussed Knotts in deciding other electronic surveillance cases; these cases neither overrule nor limit the decision in Knotts. See Carpenter, 138 S. Ct. at 2215, 2218 (distinguishing the rudimentary tracking of a vehicle via beeper from the more sweeping and comprehensive tracking of a cell phone via CSLI); United States v. Jones, 565 U.S. 400, 408-09 (2012) (concluding that the installation of a GPS device on defendant's car constituted a Fourth

of privacy in his movements along public roads. The complained-of GPS monitoring thus constituted no "search" under the Fourth Amendment.

### B. Traffic Stop

Consistent with the Fourth Amendment, a police officer may conduct a brief investigative stop when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396 (2014). Reasonable suspicion is determined based on the totality of the circumstances, including "both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. 325, 330 (1990). In deciding whether reasonable suspicion existed at the pertinent time, we consider whether reasonable suspicion existed objectively under the circumstances. See United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006). An anonymous tip may give rise to reasonable suspicion justifying an investigatory stop if the tip contains "sufficient indicia of reliability." See White, 496 U.S. at 326-27, 332.

---

Amendment search based on the government's physical trespass; and rejecting the government's reliance on Knotts, a case that involved no government trespass).

10

The evidence in this case, viewed in the light most favorable to the government, supports the district court's determination that reasonable suspicion existed to justify an investigatory stop of Howard's truck. The officers received a tip from a known informant (CI-1) about Howard's future plans to travel to Phenix City that day to pick up methamphetamine. CI-1's tip was then corroborated by a second non-anonymous informant (CI-2).

That the informants in this case were each known to police -- thus allowing the officers to assess the informants' reputation and subjecting the informants to consequences for being untruthful -- supports the reliability of the information. See Fla. v. J.L., 529 U.S. 266, 270 (2000). Moreover, that CI-2 demonstrated a personal relationship with Howard (evidenced by Howard's sharing with CI-2 his travel plans and asking to borrow CI-2's truck) also weighs in favor of CI-2's reliability. See White, 496 U.S. at 332 (when a tipster has demonstrated "a special familiarity" with a suspect and with the suspect's future itinerary, it is reasonable to believe that the tipster also has "access to reliable information about [the suspect's] illegal activities.").

Through independent police work, the officers were able to confirm significant details of the informants' tips, including the approximate time of Howard's departure, the direction of Howard's travel, and the vehicle he would be

11

driving.  Police corroboration of these kinds of future predictions is another indicator of reliability.  See White, 496 U.S. at 332 (concluding an anonymous tip was sufficiently reliable to justify an investigatory stop when the police confirmed the tipster's predictions about the suspect's future actions, including the approximate departure time, the car the suspect would be driving, and the suspect's destination).

Given the totality of the circumstances, the two informants' tips bore sufficient indicia of reliability to give rise to reasonable suspicion that Howard was engaged in criminal activity.  The district court committed no error in determining that the traffic stop was lawful.

Because this case involved no unlawful search or seizure, the "fruit of the poisonous tree" exclusionary rule is inapplicable.  For background, see Wong Sun v. United States, 371 U.S. 471 (1963) (explaining that the "fruit of the poisonous tree" exclusionary rule bars the introduction of evidence obtained as a direct result of an unlawful search or seizure).  The district court thus denied properly Howard's motion to suppress his incriminating statements.

AFFIRMED.

12